## Laird's Appeal.

85   339
97    46
97    47

1. An express direction by a testator to sell his real estate, and divide the proceeds, works a conversion of it into personalty at his death, and the fact that by the terms of his will he permitted one of his sons, at his option, to take said real estate at an appraisement, does not change the effect of the direction.

2. J. devised her estate in trust for her two sons, F. and W., but provided that in case either of them died within the period of twenty-one years from her decease, without issue then living, the whole should go to the survivor and his heirs. The will further provided that in case both sons should die within twenty-one years without issue then living, then devise over to other persons. F. died within five years from the death of his mother, and without issue. W. died shortly thereafter. He left a widow *enceinte*, who, two months after his death, gave birth to a child. *Held*, that W. died leaving "issue then living," and the devise took full effect.

October 25th 1877.   Before MERCUR, GORDON, PAXSON, WOOD-WARD and STERRETT, JJ.   AGNEW, C. J., and SHARSWOOD, J., absent.

Appeal from the Orphans' Court of *Westmoreland county*: Of October and November Term 1877, No. 242.

This was the appeal of J. M. Laird and others, from the decree of the court confirming the report of the auditor appointed to distribute the fund in the hands of the executor of the estate of Eliza M. Johnston, deceased.

Eliza M. Johnston died on the 30th of September 1865.   Her husband and two sons survived her.   She left a will, wherein, after certain specific legacies, she devised all of her estate, in trust, to her two sons, to be divided and paid to them share and share alike, when they respectively arrived at the age of twenty-one years.

The will contained this further direction: " Item : If either of my said sons should die within the period of twenty-one years from my decease, without issue then living, then, and in that event, I devise all I have devised to him, or to said trustee for his use, real and personal, to the survivor, his heirs and assigns.   Item : If both of my said sons should die within the period of twenty-one years from my decease, without issue then living, then, and in that event, I devise all I have devised them, both real and personal, or to said trustee for them, to my husband, James R. Johnston, for life, so that he may take the interest and rents and profits for life, but not the principal, and the remainder and principal thereof, after his death, I devise to my brothers and sisters who may then be living, their heirs and assigns for ever."

F. L. Johnston, the eldest son, who was born on the 29th of May 1846, died unmarried and without issue, on the 8th of May 1870.   W. R. Johnston, the other son, who was born on the 29th of November 1848, died on the 2d June 1871, leaving a widow. On the 25th of July 1871, this widow gave birth to a child, Eliza M. Johnston, which child died on the 25th of November 1875.

[Laird's Appeal.]

James R. Johnston, the husband of testatrix, died in March 1874. The fund in question was claimed on the one hand by the administrator of Eliza M. Johnston, the younger, the child of W. R. Johnston, and on the other by the appellants, who were the brothers and sisters of the testatrix.

The estate of the testatrix over which the controversy arose, came to her under the provisions of the will of her father, Rev. Francis Laird, which was proved in 1854. Among the provisions of this will was the following :—

" Lastly, it is my will that after the death of my beloved wife, Mary, all my estate be appraised and sold as soon as it can be done with advantage ; and if any of my sons think proper to take the farm on which I now live, at the appraisement, he shall have the privilege of doing so on paying the other heirs their respective shares ; and it is my will that all the money arising from the sale of my real estate be equally divided among all my children, share and share alike."

The auditor to whom the fund was referred for distribution, in his construction of this provision of Mr. Laird's will, said :—

" The intention of the testator is clear and unequivocal. He directs all his real estate to be appraised and sold, and that all the money arising from the sale of the same be equally divided among all his children. This, under the ruling in Morrow *v.* Brenizer, 2 Rawle 185, made all the estate personal at his decease. None of his children, neither his sons or daughters, had any interest in his estate as realty. The permission given any of his sons to take the homestead farm at the appraisement, meant plainly this : that any of the sons might, if he chose, become the purchaser of the homestead farm at the price fixed by the appraisers. Until the choice was made, the homestead farm, as to all the testator's children, remained personal property ; and after the choice made by the four sons, it vested in them as real estate, as purchasers under the will of their father, and not as heirs to said real estate. In regard to the daughters, the homestead farm was as to them personal property all the time. It was such at the decease of the testator, and remained such after the sons had taken it at the appraisement, their interest being their respective shares ; not of the land, but of its appraised value."

The auditor was therefore of the opinion that the fund thus derived by testatrix from her father's estate was personal property, and should as such be distributed. He then reported, inter alia, as follows : " Francis L. Johnston having died on the 8th of May 1870, within twenty-one years from his mother's death, viz., four years, seven months and eight days after her decease, without issue, the estate did not vest in his lifetime. Did it vest in William R. Johnston ? At the decease of William R. Johnston, on the 2d of June 1871, his wife, Elizabeth V., was *enceinte*, and on the 25th of July

1871 was delivered of a daughter, Eliza M. Johnston. The vesting of the fund depended on the fact that there was issue living at the death of William."

Reviewing the authorities upon the capacity of posthumous children to inherit, the auditor proceeded :—

" The conclusion is clear that W. R. Johnston, when he died, left issue living at the time of his death. The only remaining question is, to what time do the words 'then living' refer—to the death of William R., who survived Francis L., or to the expiration of twenty-one years from the death of Eliza M. Johnston, the testatrix? The language of the will is as follows, viz : 'Item: If both my sons should die within the period of twenty-one years from my decease without issue then living, then, and in that event,' &c. Eliza M. Johnston, the younger, was the only lineal descendant of Eliza M. Johnston, the testatrix. It is a fundamental principle of the law that the heir can only be disinherited by clear and express language—by an implication so strong that an intention to the contrary cannot be supposed. The authorities on this point are so numerous and so well known that the auditor deems it superfluous to refer to them here. The first object of the testatrix was to make provision for her sons and their descendants; and, therefore, if a fair construction of the devising clause in the will, will give the estate to the issue, that construction must be adopted. Transfer the words without issue then living, so as to make the sentence read : If both my said sons should die without issue then living within the period of twenty-one years from my decease, and the conclusion is almost irresistible that the words 'then living' refer to the time of the death of William, and not to the twenty-one years from the death of the testatrix. And keeping in view the fact that Eliza M. Johnston, the younger (the issue of William R.), was the heir of the testatrix, the same conclusion must be arrived at without transferring any word."

The auditor therefore awarded the fund to the administrator of Eliza M. Johnston, the child of W. R. Johnston.

Exceptions were filed to this report, which the court, Logan, P. J., dismissed and confirmed the report, and from this decree this appeal was taken by the exceptants.

*H. P. Laird*, for appellants.—The manifest intent of the testatrix was that if the line of her children or their descendants should become extinct, within the period of twenty-one years from her death, then all her estate should go to and be vested in her brothers and sisters then surviving ; and the auditor erred in not appropriating the money in the hands of the accountant to the surviving brothers and sisters of said decedent. Having issue vested no absolute estate in the children of the testatrix, and their offspring, upon the death of either could take no greater estate than

the parent had at the time of his death, which would be a determinable·estate until the expiration of the twenty-one years. There is no possible implication of a devise to the issue within the twenty-one years, of a higher or more certain character than that given to the sons of the testatrix, and on the decease of the last of them his issue had but a life-estate until the expiration of the twenty-one years, and having died before that period the estate passed under the residuary clause after the death of James R. Johnston, the husband of Mrs. Eliza Johnston.

In Mr. Laird's will there was no absolute direction to sell, because upon an appraisement it might be taken by any of the sons. The power to sell being conditional, the proceeds of the real estate were distributable as real estate : Stoner *v.* Zimmerman, 9 Harris 394 ; Nagle's Appeal, 1 Id. 260 ; Henry *v.* McCloskey, 9 Watts 145 ; Biggert's Estate, 8 Harris 17.

No authority, either English or American, can be found to sustain the position that a direction to appraise real estate works a conversion *out* and *out*, because *non constat* that the parties entitled to take at the appraisement will take it, and therefore the attempt at conversion may fail. This kind of direction does not proceed far enough to make a conversion.

*Joel S. Bigham* and *A. M. Fulton,* for appellee.—The estate of Mr. Laird in the hands of Mrs. Johnston or her estate would be personalty, 1. Because under her father's will she could in no event receive anything but money, the option to take at appraisement being to the sons only, and her share, at most, but a charge on the land ; and, 2. Because the appraisement and sale under proceedings in the Orphans' Court divested her interest in the land, if she had any, and converted the estate into money. Money, wearing the impress of realty, can retain it through one descent only : Dyer *v.* Cornell, 4 Barr 359 ; Grider *v.* McClay, 11 S. & R. 224.

The will does not provide for the failure of issue at the end of twenty-one years, but at the death of the survivor. This is apparent from the term "without issue then living." The words, "then living," must refer to the death of the survivor, otherwise the estate would have vested absolutely upon the birth of issue to the survivor, although he had outlived his issue and still have died within the twenty-one years. That is, that if the condition was simply that if the survivor should die within the time without issue a birth of issue would have filled the condition regardless of whether the issue survived his father or not, as in the case of the husband's curtesy at common law

Mr. Justice MERCUR delivered the opinion of the court, November 5th 1877.

Francis Laird, by his last will and testament, directed that after the death of his wife, all his estate should be appraised and sold. He further directed that if any of his sons thought proper to take the farm at the appraisement he should have the privilege of doing so, on paying the other heirs their respective shares, and that all the money arising from the sale be equally divided among all his children, share and share alike. He died leaving sons and daughters. The rule is too well settled, to need the citation of authorities, that an express and explicit direction by the will, to sell the real estate of the testator and divide the proceeds, works a conversion of it into personalty on his death. In this case there was an express direction to sell. The fact that it further permitted one of his sons, at his option, to take it at the valuation to be made, did not change the effect of the direction to sell. Whether or not a son acquired it, it was nevertheless a sale, and the one taking it became a purchaser. Until that period of time it continued personalty.

The only other question we deem necessary to consider is whether William R. Johnson died " without issue then living." Eliza M. Johnson devised the property in question, in trust for her two sons, Francis L. and William R., but provided in case either of them died within the period of twenty-one years from her decease, without issue then living, the whole should go to the survivor and his heirs. The will further provided, that in case both of her said sons should die within twenty-one years from her decease, without issue then living, then devise over to other persons. Francis died within less than five years after the death of his mother, without issue. William R. died afterwards, but within twenty-one years after his mother's death. He left a widow, then *enceints*, who in less than two months thereafter gave birth to a child.

It is unnecessary to cite authorities to prove that a child in *ventre sa mere*, is in law born for all purposes of inheritance. This is an acknowledged principle of English law. Under our statute it can inherit in like manner as if born in the lifetime of the intestate. The language "then living," manifestly refers to the time of the death of the son. Hence, it follows that William R. died leaving "issue then living," and the devise took full effect.

Decree affirmed.