Richard N. McGARVEY, M.D., Guardian
Ad Litem for Baby Boy Doe and Baby
Girl Roe, individually and as members
of a class of conceived but unborn chil-
dren, Plaintiffs,

v.

MAGEE–WOMENS HOSPITAL, a Penn-
sylvania Corporation, Defendants.

Civ. A. No. 71–196.

United States District Court,
W. D. Pennsylvania.

March 17, 1972.

John A. DeMay, Pittsburgh, Pa., for
plaintiffs.

George Cass, Buchanan, Ingersoll, Ro-
dewald, Kyle & Buerger, Pittsburgh,
Pa., for defendants.

## OPINION and ORDER

McCUNE, District Judge.

We are faced with two motions in this litigation which seek to enjoin a hospital from permitting the use of its facilities for the performance of abortions. The first is a motion that we dismiss the complaint for lack of jurisdiction because the action complained of was not carried out under color of state authority.

The second is for judgment on the pleadings alleging failure of the complaint to state a cause of action because unidentified embryos or fetuses are not persons or citizens within the meaning of the Fourteenth Amendment or the so called Civil Rights Act.

The plaintiff, guardian ad litem for a class of conceived but unborn children, filed a complaint alleging that such children were citizens of the United States and the Western District of Pennsylvania. He averred that Magee-Womens Hospital was a corporation, acting under color of the statutes of Pennsylvania which had, since 1968, through its officers and employees used its facilities for the termination of the lives of unborn children in violation of the Fourteenth Amendment to the Constitution of the United States,[1] and in violation of the

---

1. Section 1. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Civil Rights Act, 42 U.S.C.A. § 1981 et seq.[2] Plaintiff alleged that the unborn children have been deprived of their lives without due process of law and have therefore obviously been denied their civil rights and that the action will continue unless enjoined. The defendant answered that unborn children are not persons or citizens within the meaning of either the Fourteenth Amendment or the Civil Rights Act and therefore even though the hospital may be permitting the use of its facilities for the carrying out of abortions there is no requirement that due process be considered.

The plaintiff does not condemn abortion as such. He contends that abortion is the taking of life and he demands some form of judicial process that insures review of the merits of an abortion, i. e., whether the abortion is rational and right and just in each instance considering all of the results which might flow from it. He is not certain whether trial by jury is the right process or trial by the court without a jury or trial by some administrative agency. He is not certain whether an immediate appeal from a decision should exist or where it should go. He is not certain who would present evidence in such a proceeding on behalf of the fetus, whether a guardian presumably appointed by the Court, would be represented by counsel or not, whether the state would appoint counsel for the guardian in every case and pay counsel, whether counsel would seek a medical opinion and whether the state would pay for such opinion and the court appearance of the physician which would neces-

sarily follow. Of course the appointment of counsel for an indigent mother seeking an abortion might be required as well and the lawyers, both appointed, might find a legal battle inevitable while gestation went on apace. Perhaps a jury trial would be required before the pregnancy became advanced but we need not examine all the problems here. The plaintiff demands an injunction against the hospital. He wants to establish the right to judicial process. Presumably the form can be worked out in due time.

■ We deny the motion to dismiss for lack of jurisdiction and proceed to consider the motion for judgment on the pleadings.

The answer to the problem is whether a fetus is a person or citizen within the contemplation of the Constitution and the Act of Congress already mentioned.

The plaintiff in his brief phrases the question this way, "Where the life of an unborn child is threatened by the act of another, is it a legal person as to whom judicial action can be taken for its protection?"

The inaccuracy in this question is caused by the use of the word "can." The plaintiff argues in this proceeding that judicial action *must* be taken for the protection of the unborn child. There is no doubt that action *can* be taken and has been taken in many instances to protect the life of an unborn child, see for example, Raleigh Fitkin-Paul Morgan Memorial Hospital, etc. v. Anderson, 42 N.J. 421, 201 A.2d 537 (1964), cert. denied, 377 U.S. 985, 84 S.Ct. 1894, 12 L.Ed.2d 1032 (1964) where a court ordered a blood transfusion to save an

2. Equal rights under the law
   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C.A. § 1981.

Civil action for deprivation of rights
   "Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983.

unborn child in spite of the mother's religious scruples.

The question causes one to pause because of the moral problems inherent in it arising out of our religious teaching. It appears to be widely held at this point in history however in this country where people are numerous that abortion, if not favored, is at least condoned where the mother wants it, requests it and has some plausible reason upon which to base her decision. This is especially true where the fetus has not reached the approximate age of 24 weeks, i. e., has not quickened. Less than a month ago in Byrn v. New York City Health and Hospitals Corp., 329 N. Y.S.2d 722 (1972), the appellate division of the New York Supreme Court upheld New York State's so called "24-week" abortion law. The New York act passed in 1970 permits an abortion by a licensed physician when necessary to preserve a woman's life or, as a matter of course, upon request within 24 weeks after the commencement of pregnancy. The act was challenged by a guardian ad litem on behalf of all unborn infants, scheduled for abortion in New York City hospitals, as violative of the Due Process and Equal Protection clauses of the Fourteenth Amendment. The hospitals denied that a 24 week old fetus was a "person" within the meaning of the Fourteenth Amendment and argued that a woman's right to choose whether to bear a child could not be restricted by law absent a compelling state interest. The court found no indication that the framers of the Constitution had ever intended to protect "fetal life" when the Constitution was drafted.

Nor have we been cited authority that the framers of the Constitution contemplated fetal life or thought of unborn children as persons for purposes of constitutional protection or that Congress had fetal life in mind when it drafted the Civil Rights Act. That act adopted after the Civil War was intended to secure to minority races the equal protection of the law, Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1969). We are not aware of any mention in the debates preceding that act which would indicate the intention of Congress to protect unborn children.

Congress has had ample occasion to consider and reflect upon the question in recent years. In 1953 it amended the District of Columbia abortion statute of 1901 to permit abortion when performed by a licensed physician to protect a mother's life or health. In United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971) the Supreme Court had occasion to pass upon that statute which had been attacked as unconstitutionally vague. Nowhere in the majority opinion, the dissenting opinion or the three concurring opinions was there any inference that fetal life was entitled to constitutional protection. The majority opinion stated:

"When Congress passed the District of Columbia Abortion Law in 1901 and amended it in 1953, it expressly authorized physicians to perform such abortions as are necessary to preserve the mother's 'life or health.' Because abortions were authorized only in more restrictive circumstances under previous District of Columbia Law, the change must represent a judgment by Congress that it is desirable that women be able to obtain abortions needed for the preservation of their lives or health." United States v. Vuitch, supra at page 70, 91 S.Ct. at page 1298.

We realize that the issue in Vuitch was whether or not a statute was unconstitutionally vague, not whether fetal life should be constitutionally protected, but we refer to the statute and the opinion to show that Congress and the Supreme Court have had opportunity to comment on fetal life in constitutional terms.

The brief of plaintiff is devoted to proof that the law recognizes fetal life and of course, that has been proven. The question here is not whether an unborn child is alive for there is ample authority in the law that life exists before

birth starting with 1 Blackstone's Commentaries, 129–130 cited in the plaintiffs' brief:

"Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb. . . . An infant in ventra sa mere, or in the mother's womb, is supposed in law to be born for many purposes."

In the civil law an unborn child has been recognized for many purposes, e. g., he can inherit or take by devise, Laird's Appeal, 85 Pa. 339 (1887); his guardian can recover on his behalf for prepartum injuries in tort, Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93 (1960) and the courts are open to him so that he might recover for the death of his father, La Blue v. Specker, 358 Mich. 558, 100 N.W.2d 445 (1960). As more medical knowledge has become available it has been given due recognition and the fetus has been extended additional protection by the courts, see discussion in *Sinkler*, supra.

On the other hand a fetus has not been considered a person for other purposes of the law. He could not be the subject of homicide at common law, 3 Coke Institutes, 58 (1648):

"If a woman be quick with childe and by a potion or otherwise killeth it in her wombe, or if a man beat her, whereby the childe dieth in her body, and she is delivered of a dead childe, this is a great misprison and no murder."

In recent decisions Ohio has ruled that a fetus is not a person for purposes of the Ohio Vehicular Homicide Statute, State v. Dickinson, 23 Ohio App.2d 259, 263 N.E.2d 253 (1971) and California has ruled the same way in determining the application of an 1850 statute defining murder, Keeler v. Superior Court of Amador County, 2 Cal.3d 619, 87 Cal. Rptr. 481, 470 P.2d 617 (1970).

It will serve no purpose here to analyze all of the decisions which protect an unborn child and all of those which refuse protection. Reams of paper have been used in recording such studies.

Nor is it an answer to the question to cite law that abortion has been an offense of some degree from the time of Moses, 21st Chapter of Exodus, 22 verse. The problem is admittedly a serious moral one, see the article "Abortion: A Question of Right or Wrong" July 1971 issue of the American Bar Association Journal, and the issue involves the Constitutional Rights of Women, see Babbitz v. McCann, 310 F.Supp. 293 (E.D. Wis.1970) holding that a woman has the right to determine whether to obtain an abortion if the fetus has not quickened.

■ The narrow question is whether we will afford fetal life constitutional protection. One need not be a strict constructionist to answer this in the negative for to answer otherwise would be to create a new administrative jungle in the name of a civil right never heretofore conceived. This is a problem for the legislatures of the various states. They must decide the problems in the light of the moral issues, the conflicting rights of the mother and child, the extent of medical knowledge and the interests of the state.

If some form of judicial process is to be required before abortion may be undertaken it should be developed after mature consideration. A decree by a court that such process is required by virtue of the Fourteenth Amendment or the Civil Rights Act could not be justified. It would cause universal confusion and would be a striking example of judicial legislation. We must therefore grant the motion.