Helen H. ARNOLD, individually, and as Mother and next friend of John Doe, a minor unemancipated child, and, further as putative grandmother and next friend of that certain unborn child conceived by the said John Doe with one Jane Doe, and is more fully described herein, and Charles Davis, individually, and as Father and next friend of Jane Doe, a minor unemancipated child, Plaintiffs–Appellants,

v.

BOARD OF EDUCATION OF ESCAMBIA COUNTY, ALABAMA, Kay Rose, individually and in her official capacity as guidance counsellor for the said Board of Education of Escambia County, Alabama, Melvin Powell, individually and in his official capacity as an employee of the Board of Education of Escambia County, Alabama, Defendants–Appellees.

No. 87–7617.

United States Court of Appeals, Eleventh Circuit.

Aug. 10, 1989.

George Huddleston, Lynn E. Quinley, Huddleston, Powell & Quinley, Daphne, Ala., for plaintiffs-appellants.

Susan Williams Reeves, Birmingham, Ala., for defendants-appellees.

Before FAY and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

FAY, Circuit Judge.

Two unemancipated minors and their parents brought this suit against the Escambia County School Board in Alabama and two school officials. The plaintiffs allege that the two school officials coerced the minor female into undergoing an abortion which violated certain rights protected by the United States Constitution and 42 U.S.C. § 1983. The plaintiffs allege violations of their first, thirteenth and fourteenth amendment rights as well as claims under 42 U.S.C. §§ 1981, 1983 and 1985. In federal district court, the defendants moved to dismiss the complaint arguing that the complaint failed to state grounds upon which relief could be granted. Fed.R. Civ.P. 12(b)(6). The district court granted the motion and dismissed the suit as to all the defendants. The plaintiffs now appeal the dismissal. Since we find that the plaintiffs sufficiently allege a cause of action against some of the defendants, we reverse in part, affirm in part and remand for proceedings consistent with this opinion.

I. Background

On October 17, 1986, Helen Arnold and her minor son John Doe initiated this action in the United States District Court for the Northern District of Alabama. Later, these plaintiffs amended the complaint to join Charles Davis and his minor daughter Jane Doe as plaintiffs. The complaint names as defendants the Escambia County School Board, Kay Rose and Melvin Powell. At the time of the alleged events, the school board employed Kay Rose as a school guidance counselor and Melvin Powell as the high school's vice principal. The plaintiffs sue these school officials in both their individual and official capacities.

The complaint alleges the following facts. On March 10, 1986, Jane Doe and John Doe discovered that Jane was pregnant. On March 27, 1986, Kay Rose summoned Jane to her office for counseling. After speaking with Jane, Rose summoned

John Doe to her office where he admitted paternity. At the expense of the school board, Rose procured a pregnancy test for Jane which proved positive. Rose informed Powell of Jane's pregnancy on April 2, 1986.

The counselors then allegedly coerced the children to agree to abort the child. Because the children were financially unable to afford the medical services attendant to an abortion, the school officials paid Jane and John to perform menial tasks for them. On May 8, 1986, Powell allegedly gave $20.00 to the individual who drove the children to the medical facility in Mobile, Alabama where Jane obtained the abortion.

The complaint alleges that Rose and Powell "coerced" the children "in diverse respects and so fundamentally imposed their wills upon the children that the children were unable to exercise any freedom of choice with regard to the decision whether or not to agree to the termination of the pregnancy." Further, the plaintiffs allege that the school officials "coerced these children to refrain from notifying their parents regarding the matter" and "to maintain the secrecy of their plan" to obtain an abortion for Jane.

Finally, John Doe and his mother maintain that on November 12, 1986, the school board suspended John Doe for three days for violating a school rule. John Doe protested and attempted to explain the circumstances to school officials, but was afforded no meaningful opportunity to be heard. He alleges that he did not violate any school rule and that the suspension was in retaliation for filing a law suit against the school board and the school officials.

The plaintiffs argue that the above allegations state eight causes of action. They assert several claims under 42 U.S.C. § 1983 that the various defendants violated the plaintiffs' constitutional rights of due process, free exercise of religion, privacy and equal protection under the first and fourteenth amendments and freedom from involuntary servitude under the thirteenth amendment. The plaintiffs also allege a claim for civil conspiracy under 42 U.S.C. § 1985(3) (1982). After the plaintiffs filed several amended complaints and the parties conducted discovery, the defendants filed a 12(b)(6) motion to dismiss the complaint for failure to state a claim for relief.[1] The district court granted the motion and dismissed the complaint. The plaintiffs now appeal the complaint's dismissal.

## II. Pleading § 1983 Claims

To state a claim for relief, Rule 8 of the Federal Rules of Civil Procedure merely requires " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is well established that a complaint is not subject to dismissal unless it appears to a certainty that no relief can be granted under any set of facts that can be proved in support of the complaint's allegations. *Id.* at 45, 78 S.Ct. at 101. Generally, the Federal Rules of Civil Procedure do not require a claimant to set forth in detail the facts upon which he bases his claim. *Id.* at 47, 78 S.Ct. at 102. Rather, cases in which the facts do not establish a true controversy are more properly disposed of through summary judgment. However, in an effort to eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims we, and other courts, have tightened the application of Rule 8 to § 1983 cases.[2] *Johnson v. Wells*, 566 F.2d

---

1. The defendants also moved for dismissal as a sanction because the plaintiffs had failed to comply with various orders regarding discovery. This motion was still pending when the district court judge dismissed the complaint under Rule 12(b)(6).

2. The Supreme Court has called for a firm application of the Federal Rules of Civil Procedure and the dismissal of insubstantial claims on summary judgment in civil rights cases apparently recognizing that public officials can become unduly enmeshed in burdensome litigation. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (merely conclusory allegations of unconstitutional motive, devoid of factual support, must be found lacking and be

1016 (5th Cir.1978).[3] Typically, Rule 8 is applied more rigidly to allegations of conspiracy and absolute immunity, and to claims plead against a local government that the challenged conduct constitutes its official policy or custom. S. Nahmod, *Civil Rights and Civil Liberties Litigation, the Law of Section 1983* § 1.16 at 31 (2nd ed. 1986). Using this framework, we examine the allegations of the appellants' complaint and in doing so, express no view regarding whether the facts which the plaintiffs can establish in this case will be sufficient to withstand a motion for summary judgment.

### III. Section 1983 Claims

■ Section 1983 creates a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges or immunities "secured by the Constitution or laws." 42 U.S.C.1983 (1982). To state a prima facie § 1983 claim grounded on a constitutional violation, a plaintiff must allege that 1) the defendant's conduct caused the constitutional violation, and 2) the challenged conduct was "under color of state law." 42 U.S.C. § 1983 (1982). The color of law inquiry is similar to the state action requirement under the fourteenth amendment. For instance, when state action is present, the color of

law requirement is also met. S. Nahmod, *Civil Rights and Civil Liberties Litigation, the Law of Section 1983* § 2.01 at 73 (2nd ed. 1986).

■ In addition, to state a claim against a local governmental body, the complaint must allege that the challenged conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Thus, in this case, the constitutionally violative conduct must have been the product of an official school board custom or policy. The theory of respondeat superior is insufficient to impose liability on the school board. *Id.* at 691, 98 S.Ct. at 2036. We now address all of these questions for each of the alleged § 1983 violations.[4]

### A. Constitutional Rights

#### 1. The Right to Privacy

■ Both Jane Doe and her father claim that the school officials coerced Jane into having an abortion. We find that coercing a minor to abort a child violates the minor's constitutionally protected freedom to choose whether to abort or bear her child. Further, the allegations in the complaint are sufficient to state a cause of

---

dismissed). However, in making a stricter application of Rule 8 to civil rights cases, a court should be mindful that "fundamental rights and important questions of public policy are involved in actions under the various civil rights statutes and should not dismiss the complaint unless it clearly is frivolous or fails to state a claim for relief." 5 C. Wright & Miller, *Federal Practice and Procedure* § 1230 (1969 & 1984 supp.).

Every circuit requires some minimal level of specificity as to the facts underlying each allegation in the pleading of civil rights complaints. *See Hobson v. Wilson,* 737 F.2d 1 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *Hurney v. Carver,* 602 F.2d 993 (1st Cir.1979); *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir.1979); *Smith v. International Longshoremen's Ass'n,* 592 F.2d 225, 226 (4th Cir. 1979); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3rd Cir.1978); *Uston v. Airport Casino, Inc.,* 564 F.2d 1216, 1217 (9th Cir.1977); *Nickens v. White,* 536 F.2d 802, 803 (8th Cir. 1976); *Coopersmith v. Supreme Court,* 465 F.2d 993, 994 (10th Cir.1972); *Place v. Shepherd,* 446

F.2d 1239, 1244 (6th Cir.1971); *Jewell v. Covington, Ga.,* 425 F.2d 459, 460 (5th Cir.), *cert. denied,* 400 U.S. 929, 91 S.Ct. 195, 27 L.Ed.2d 189 (1970).

**3.** The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**4.** A final issue which arises under the § 1983 claims is the extent to which the defendants are entitled to immunity. Although the appellees have suggested on appeal that the defendants are entitled to immunity as a matter of law, immunity was not a basis for the trial court's ruling and we find it premature at this time to address. For cases discussing immunity *see generally Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989) (individual immunity); *Smith v. Dallas County Board of Education,* 480 F.Supp. 1324 (S.D.Ala.1979) (eleventh amendment immunity).

action on behalf of Jane Doe. Any cause of action alleged by Charles Davis as the father of Jane Doe can only be stated in terms of an impermissible interference with family relations which we will discuss later in this opinion. Here we address Jane Doe's cause of action.

Students in our educational system do not leave their constitutionally protected freedoms at the schoolhouse door. *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Indeed, the Supreme court has recognized that "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker*, 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). Boards of education educate the young to be productive citizens. To ensure that important principles of our government are not discounted by our youth as mere platitudes, we must give scrupulous protection to their rights at an early stage. *Tinker*, 393 U.S. at 507, 89 S.Ct. at 736. From this, it is clear that the school officials and the board had a duty to respect the constitutional rights of Jane Doe.

Our system of ordered liberty regards individual autonomy with high esteem. Although many guarantees of individual autonomy are specifically enumerated in the Bill of Rights, the Supreme Court has also found that these specific guarantees have penumbras emanating from them which give them life and substance. *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). These penumbral rights create zones of privacy within which we find the constitutional guarantees safeguarding an individual's freedom of choice in matters relating to marriage and family. *Id.; Roe v. Wade*, 410 U.S. 113, 169, 93 S.Ct. 705, 735, 35

L.Ed.2d 147 (1973) (Stewart, J. concurring).[5] The Supreme Court has held that the rights emanating from the fourteenth amendment are broad enough to include "the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972) (emphasis omitted); *Roe;* 410 U.S. at 153, 93 S.Ct. at 726.[6]

It is freedom in the decisionmaking process which receives constitutional protection. *Roe*, 410 U.S. 113, 93 S.Ct. 705; *Griswold*, 381 U.S. 479, 85 S.Ct. 1678; *Carey v. Population Services International*, 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed. 2d 675 (1977); *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Eisenstadt*, 405 U.S. 438, 92 S.Ct. 1029. Resolution of the childbearing decision embraces two alternatives, those of aborting the child or carrying the child to term. Both alternatives enjoy constitutional protection from unwarranted governmental interference. While the cases in this area have dealt primarily with governmental interference with the abortion alternative, we fail to see how the attention given the decision to abort in any way diminishes the protection which should be given the decision to carry the child to term. We need not create a new constitutional right to protect Jane Doe's freedom to choose to carry her child to term; we merely refocus the emphasis concerning this freedom of choice from the alternative of abortion to the alternative of procreation. There simply can be no question that the individual must be free to decide to carry a child to term.

The Supreme Court has struck several state laws found to interfere with the free-

---

5. *See e.g., Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (family relations); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (family relations); *Meyer*

*v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (family relations).

6. We acknowledge the Supreme Court's recent decision in *Webster v. Reproductive Health Services et al.*, — U.S. —, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989). However, we do not find that it affects our decision today.

dom of this decision making process. *Roe,* 410 U.S. 113, 93 S.Ct. 705 (struck criminal abortion statutes); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (struck overly restrictive Georgia abortion regulation); *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) (struck statutory provisions which required informed consent before an abortion, doctor reports and attendance of a second physician). Like these state imposed restrictions, governmental coercion to abort a child constitutes impermissible intrusion on this constitutionally guaranteed freedom of choice. The particular vulnerability of a schoolchild to influence from one in an authoritative position, such as a school official, intimates that under the circumstances of this case a set of facts could exist which constitutes coercion of Jane Doe to agree to an abortion. We find the allegations in the complaint sufficient to state a constitutional violation under § 1983.[7]

 John Doe and his mother claim that their constitutional rights were violated because school officials coerced John Doe into consenting to Jane Doe's abortion. We find these allegations insufficient to state a cause of action. The pregnant woman is the only one who controls the abortion decision. *Danforth,* 428 U.S. at 71, 96 S.Ct. at 2842. Not even the spouse of a pregnant woman has the legal right to prevent an abortion and require the child to be carried to term. *Id.*[8] As the boyfriend of Jane, John Doe's agreement or disagreement with Jane Doe's abortion decision does not enjoy constitutional protection.

Similarly, Helen Arnold as a putative grandmother has no constitutional rights flowing from Jane Doe's pregnancy. Consequently, John Doe and his mother's abortion related claims are insufficient to establish a constitutional right violation and we affirm the dismissal.[9]

2. Familial Relations

 The second cause of action alleges that the defendants wrongfully coerced the minors to refrain from consulting with their parents prior to determining whether to proceed with the abortion and that this unconstitutionally interfered with the right of privacy existing between the plaintiffs and their children. We find that a parent's constitutional right to direct the upbringing of a minor is violated when the minor is coerced to refrain from discussing with the parent an intimate decision such as whether to obtain an abortion; a decision which touches fundamental values and religious beliefs parents wish to instill in their children. Hence, the complaint sufficiently states a cause of action for invasion in the familial right to privacy on behalf of Charles Davis, the father of Jane Doe and Helen Arnold, the mother of John Doe.

 As designed to secure individual liberty, the Bill of Rights must afford the formation and preservation of certain personal relationships a substantial measure of sanctuary from unjustified interference by the government. *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984). The family unit generates just the type of highly personal relationships deserving of this constitutional sanctuary. Family relation-

---

**7.** We emphasize that we espouse no position regarding whether the facts and circumstances surrounding Jane Doe's abortion decision equate to coercion sufficient to withstand a motion for summary judgment. Rather, we hold merely that the allegations, if true, that Jane Doe was coerced to agree to an abortion constitute a violation of a constitutional right.

**8.** In *Danforth,* while the Supreme Court acknowledged that the decision to terminate a pregnancy should be one concurred in by both the wife and her spouse, the court held that "when the wife and husband disagree on this decision, the view of only one of the two mar-

riage partners can prevail. Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor." *Danforth,* 428 U.S. at 71, 96 S.Ct. at 2842.

**9.** The complaint also attempts to state a cause of action under § 1983 on behalf of the unborn fetus. An unborn fetus is not a "person" or a "citizen" within the contemplation of § 1983. *McGarvey v. Magee–Womens Hospital,* 340 F.Supp. 751 (W.D.Pa.1972), *aff'd* 474 F.2d 1339 (3rd Cir.1973).

ships "by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." *Id.* For this reason, the Constitution protects a private realm of family life which the state cannot enter without compelling justification. *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). Within the constitutionally protected realm rests the parental freedom to inculcate one's children with values and standards which the parents deem desirable. *Runyon v. McCrary,* 427 U.S. 160, 177, 96 S.Ct. 2586, 2597, 49 L.Ed.2d 415 (1976). Indeed, parents have the right to decide free from unjustified governmental interference matters concerning the growth, development and upbringing of their children.

The Supreme Court has addressed this right in cases involving parent-state conflicts in the areas of medical care and education. For instance, in *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), the Supreme Court held that a state could not prohibit the teaching of a foreign language in private schools because the statute improperly infringed upon the liberty of both parents and teachers to make educational decisions. In *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the Court held that a state could not effectively ban parochial or private schools by requiring parents to send their children to government operated schools. The Court stated that "[i]t is not seriously debatable that the parental right to guide one's child intellectually and religiously is a most substantial part of the liberty and freedom of the parent." *Id.* at 518. More recently, in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Supreme Court held that the state's interest in uni-

versal education is not absolute. Rather, when the state impinges upon fundamental rights, such as those protected by the free exercise clause of the first amendment and the traditional interest of parents with respect to the religious upbringing of their children, the state interests must be balanced against the interests of the parent. The Court declined to enforce the Wisconsin compulsory formal education requirement after the eighth grade where to do so would infringe upon the free exercise of the Amish religion and intrude on the "fundamental interest of parents ... to guide the religious future and education of their children." *Id.* at 232, 92 S.Ct. at 1541. *See also Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) (established the parental right to decide whether to commit one's own child to a mental institution).

■ These cases demonstrate a willingness to protect from unjustified state interference the parental right to structure the education and religious beliefs of one's children. Likewise, in this case we encounter a state intrusion on this parental right. Coercing a minor to obtain an abortion or to assist in procuring an abortion and to refrain from discussing the matter with the parents unduly interferes with parental authority in the household and with the parental responsibility to direct the rearing of their child. This deprives the parents of the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children.[10]

■ We recognize that parental autonomy to direct the education of one's children is not beyond limitation. *Prince,* 321 U.S. 158, 64 S.Ct. 438. When parents enroll their children in public schools they cannot demand that the educational program be tailored to their individual preferences. *Roman v. Appleby,* 558 F.Supp. 449, 456

10. We acknowledge that John Doe has no constitutionally recognized rights in the decision-making process of whether Jane Doe should have aborted the child. *Danforth,* 428 U.S. at 71, 96 S.Ct. at 2842. However, the absence of rights in this decision does not affect the parental right to inculcate a male minor with the

values the parent deems desirable. We hold that coercing a male minor to assist in procuring an abortion and to refrain from discussing this matter with his parents constitutes an intrusion into a traditionally private sphere of family life.

(E.D.Penn.1983). Instead, a reasonable accommodation must be found by balancing the traditional rights of parents in the rearing of their children and the interest of the state in controlling public schools. While counseling intrudes somewhat on parental control over a child, we acknowledge the important role a guidance counselor plays as a trusted confidant of many students. Counselors possess first amendment rights to free speech and we do not seek to curtail the beneficial use of counseling.

█ Further, we are not, as appellees argue, constitutionally mandating that counselors notify the parents of a minor who receives counseling regarding pregnancy. We hold merely that the counselors must not coerce minors to refrain from communicating with their parents. The decision whether to seek parental guidance, absent law to the contrary, should rest within the discretion of the minor. As a matter of common sense, not constitutional duty, school counselors should encourage communication with parents regarding difficult decisions such as the one involved here. "There can be little doubt that the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and advice of her parents in making the very important decision of whether to have a child." *Danforth*, 428 U.S. at 91, 96 S.Ct. at 2851 (Stewart, J., concurring); *Belloti v. Baird*, 443 U.S. 622, 640, 99 S.Ct. 3035, 3046, 61 L.Ed.2d 797 (1979). The law's concept of the family presumes that parents possess what a child lacks in maturity, experience and capacity for judgment. *Parham v. J.R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101 (1979). Parental consultation is particularly desirable regarding the abortion decision since for some the situation raises profound moral and religious concerns. *Belloti*, 443 U.S. at 640, 99 S.Ct. at 3046.

11. Whether the defendants in fact interfered with Jane's free exercise rights must be determined by balancing the minor's first amendment rights with the state interest in controlling public schools. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *see also*

### 3. Free Exercise of Religion

The third and fifth claims allege that the defendants' actions in coercing the children into agreeing to terminate the pregnancy interfered with the minors' first amendment right to the free exercise of their religion. The first amendment bars the government from making any law "prohibiting the free exercise" of religion. Free exercise problems can arise when government regulation compels conduct which is forbidden by one's religious belief. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (an act awarding unemployment compensation only to jobless workers who made themselves available for work Monday through Saturday was found unconstitutional as applied to Seventh Day Adventists, whose religion makes Saturday the day of rest). In essence, the state may not compel an individual to act contrary to his religious beliefs.

█ In this case, Jane Doe alleges that a school official imposed her will upon Jane to have an abortion. Jane claims that because abortion is prohibited by her religious beliefs, the counselor interfered with Jane's free exercise rights. The allegation, if true, that a school official compelled Jane to do an act inconsonant with her religious beliefs is sufficient to state a cause of action under § 1983 for a violation of Jane's free exercise rights.[11]

█ John Doe also alleges a claim under § 1983 that the defendants violated his free exercise rights by coercing him to consent to Jane's abortion. As mentioned, John Doe has no constitutionally recognized privacy rights regarding the aborted pregnancy. However, what rights are protected under the constitutional penumbra of privacy is an entirely different matter from what is protected by the first amendment free exercise clause. On a 12(b)(6) motion to dismiss, we view John Doe's allegations regarding his religious tenets as

*Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969) (school authorities may curtail students' rights where it is necessary to preserve discipline, the rights of other students, and the educational function of the school).

true and do not inquire into the truth or sincerity of these allegations, a matter better handled on a motion for summary judgment. John Doe's religion could prohibit him, as a putative father, from consenting to an abortion or assisting in procuring an abortion for another. If the counselors coerced him into consenting or assisting in obtaining an abortion for Jane and this was against his religious beliefs, the counselors could have violated John Doe's free exercise rights. Consequently, John Doe's allegation that the defendants coerced him to consent to the abortion in violation of his free exercise rights states a cause of action. Accordingly, the trial court's dismissal of this claim is reversed.

### 4. Slavery

■ The plaintiffs also assert a § 1983 claim that the minors' performance of menial tasks for the school officials violated the thirteenth amendment prohibition against slavery and involuntary servitude. Section 1 of the thirteenth amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime ... shall exist within the United States...." Section 2 gives Congress the power to "enforce this [amendment] by appropriate legislation." The amendment prohibits conduct which constitutes a badge or incident of slavery.

The scope of the thirteenth amendment was broadened dramatically when the Supreme Court expanded the definition of what conduct could constitute "badges and incidents of slavery." *Jones v. Alfred H. Mayer, Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). The Court found that the thirteenth amendment could be interpreted broadly enough to prohibit private racial discrimination in real estate transactions.[12] Further, when enacting legislation to enforce the amendment, Congress has the power "rationally to determine what are the badges and incidents of slavery."

*Id.* at 440, 88 S.Ct. at 2203. While the thirteenth amendment has been broadened to prohibit a wider range of conduct, it clearly does not encompass a situation where an individual is paid for services willingly performed. The complaint merely alleges that the minors performed tasks for the counselors to earn money to afford an abortion. There are no allegations that the minors performed the tasks unwillingly or involuntarily. Thus, the trial court properly dismissed this claim where the complaint alleged nothing to indicate involuntary servitude was even remotely involved.

### B. State Action and Official Policy and Custom Requirement

■ As previously discussed, under § 1983, in addition to alleging a constitutional right violation, a plaintiff must also allege that the challenged conduct was "under color of state law." Moreover, to impose liability on the school board as a unit of local government, the plaintiff must allege that the challenged conduct executed an official policy or custom of the school board. As school employees, Rose and Powell apparently operated with the authority of the state. Thus, their conduct in their capacity as school officials constitutes action under the color of state law. We find that the complaint sufficiently states a § 1983 claim against the school officials individually.

■ However, whether the defendants' actions implemented an official policy or custom of the school board sufficient to impose liability on the school board under § 1983 is a more complicated inquiry. Official policy is easily found in cases such as *Monell* where the local government formally makes a decision which when executed gives rise to a constitutional violation. *Monell*, 436 U.S. 658, 98 S.Ct. 2018 (1978) *Monell* involved a written rule promulgated by local government officials which required pregnant employees to take un-

---

**12.** Whether a claim may be brought directly under the thirteenth amendment remains undecided. *Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981); *Terry Properties, Inc. v. Standard Oil Co.*, 799 F.2d 1523 (11th Cir.1986). However, it appears that when only the amendment itself is concerned, absent any statute, the amendment is given a very narrow interpretation as to what constitutes the badges and incidents of slavery. *Memphis*, 451 U.S. 100, 101 S.Ct. 1584.

paid leaves of absence before such leaves were medically required). Determining local government liability becomes more difficult in cases where the local government itself has not acted, but only certain high ranking officials. In this respect, the *Monell* court stated that official policy or custom may be made by officials "whose acts or edicts may fairly be said to represent official policy...." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. The problems arise in determining which high-ranking officials make policy and under what circumstances. *See generally* S.H. Nahmond, *Civil Rights and Civil Liberties Litigation: The Law of § 1983* § 6.07 (2nd ed. 1986).

■ Recently, the Supreme Court addressed some of these issues in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Pembaur*, the Court held that a decision by a county prosecutor and sheriff to force entry unconstitutionally into a doctor's office on a single occasion could constitute an official policy or custom of the county subjecting it to liability under § 1983. The court emphasized that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. at 1299. Even a policymaker's ability to exercise discretion when performing certain functions alone does not give rise to local government liability based on an exercise of that discretion.[13] *Id.* at 482, 106 S.Ct. at 1299. "The official must also be responsible for establishing final government policy respecting such activity" before the unit of local government may be held liable. *Id.* at 482–3, 106 S.Ct. at 1299–1300. Whether

an official has final policymaking authority is a question of state law. *Id.*

In this case, the complaint alleges that the school board delegated to Rose final decisionmaking authority regarding counseling. This allegation is sufficient to withstand a motion to dismiss under 12(b)(6). However, to impose liability on the school board, the appellants must establish in district court that the school board delegated to Rose final policymaking authority as to whether the board's policy would be to favor or disfavor abortion.[14]

## IV. Racial Discrimination

■ In the complaint's fourth cause of action, the appellants allege a claim for racial discrimination under 42 U.S.C. § 1981 (1982). The complaint alleges that the defendants conducted themselves as they did solely because the minors were black. A reasonable interpretation of Jane Doe's allegations is that the defendants counselled black students to have an abortion and white students to carry the fetus to term. John Doe alleges that defendants' violation of his constitutional rights was due to racial animus. The fourth cause of action also incorporates the prior paragraphs. Through the other paragraphs, the complaint is broad enough to set forth a set of facts which encompasses a § 1983 claim based on racial discrimination under the equal protection clause of the fourteenth amendment.

Section 1981 protects against discrimination on the basis of race or alienage in a limited range of civil rights including the right to make and enforce contracts, to sue, and to give evidence.[15] *Garner v. Giar-*

---

13. The *Pembaur* Court elaborated on this by stating that "for example, the County Sheriff may have discretion to hire and fire employees without also being responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability." *Pembaur*, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12 (emphasis in original).

14. *See Parker v. Williams*, 862 F.2d 1471, 1480–81 (11th Cir.1989); Nahmod, *supra*, § 6.09–6.10.

15. Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*russo,* 571 F.2d 1330 (5th Cir.1978). Although it is not confined to contractual matters, it is most often invoked in that context. Besides the language protecting against discrimination in the right to contract, § 1981 also provides that "all persons ... shall have the same right ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." This has been referred to as the equal benefit clause of § 1981. In *Mahone v. Waddle,* 564 F.2d 1018 (3rd Cir.1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), we find an excellent discussion of the scope of § 1981 including the statute's equal benefit clause. *Id.* at 1027–30. Our court has apparently not ruled on this aspect of § 1981. However, we find it unnecessary at this time to delve into the question of the scope of the equal benefits clause of § 1981 since we see no difference in a claim for racial discrimination which Jane Doe or John Doe could assert under the equal protection clause of the fourteenth amendment and a discrimination claim which they could assert under § 1981. Likewise, the defects found with the dismissed claims would not be cured by restating them under § 1981. Consequently, since each of the minors has adequately stated a claim for a constitutional violation, their allegations that these violations were the result of racial animus are sufficient to state a claim under the equal protection clause. Accordingly, we find that the complaint sufficiently sets forth a § 1983 claim for a violation of the minors' equal protection rights under the fourteenth amendment.[16]

## V. Conspiracy

The plaintiffs maintain a claim under 42 U.S.C. § 1985(3) (1982) that the defendants conspired to deprive the minors of their constitutional rights because they were black. Section 1985(3) creates a cause of action for damages against conspiracies which deprive persons of the equal protection of law or other federal rights, privileges or immunities. To recover damages under § 1985(3), a plaintiff must establish that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Almon v. Sandlin,* 603 F.2d 503 (5th Cir.1979). Under § 1985(3), a plaintiff must allege: 1) a conspiracy; 2) motivated by racial or other class-based invidious discrimination, 3) for the purpose of depriving directly or indirectly any person of equal protection of the laws of equal privileges and immunities under the laws, 4) some act committed in furtherance of the conspiracy and 5) an injury to the plaintiff's person or property or a deprivation of any right or privilege of a United States citizen. *Griffin,* 403 U.S. at 102–03, 91 S.Ct. at 1798–99; *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *Quinones v. Szorc,* 771 F.2d 289, 291 n. 1 (7th Cir.1985). The existence of the conspiracy may be proven by circumstantial evidence and a plaintiff must simply plead general facts from which a conspiracy can be inferred to withstand a 12(b)(6) motion. *Quinones,* 771 F.2d at 291. *Hawk v. Perillo,* 642 F.Supp. 380, 392 (N.D.Ill.1985). Facts detailing the overt acts must be plead more specifically. *Quinones,* 771 F.2d at 291.

In this case, the facts outlined in the complaint allege that Rose coerced Jane into having an abortion, Rose informed Powell of the minor's situation, the minors performed tasks for both Powell and Rose to earn money and Powell gave $20 to the individual driving Jane to Mobile to obtain the abortion. From these allegations, one may infer that Rose and Powell agreed to act in concert. Further, these allegations sufficiently detail overt acts in furtherance of the conspiracy to withstand a motion to

---

**16.** We note that purpose or intent to discriminate must be present before there is a violation of equal protection for racial discrimination. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Personnel Admr. of Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).

dismiss under 12(b)(6). Consequently, we find that Jane Doe and John Doe sufficiently state a § 1985(3) conspiracy claim against Rose and Powell in their individual capacities.

The complaint, however, fails to implicate the school board in the conspiracy in any way. The complaint did not allege any school board act from which the school board's participation in the conspiracy may be inferred. The appellants did not allege any communication between the counselors and the school board. Nor did the appellants allege that the school board even had knowledge of the counselors' actions. For this reason, the trial court's dismissal of the conspiracy claim against the school board is affirmed.

## VI. Due Process/Suspension Claim

 Helen Arnold asserts a claim directly and on behalf of her son that the defendants violated John Doe's due process rights. Ms. Arnold alleges that the school suspended John Doe for three days solely in retaliation for the filing of a law suit against the defendants and without affording him any meaningful opportunity to be heard. We find that the trial court properly dismissed Helen Arnold's claim in her own behalf for the deprivation of her son's due process rights. However, we find the allegations sufficient to state a cause of action on behalf of John Doe.

The Supreme Court has held that where a student is suspended for disciplinary reasons for 10 days or less, due process requires that he be given "oral or written notice of the charges against him and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). Taken as true, John Doe's allegations that he was not given an opportunity to be heard before his suspension for disciplinary reasons are sufficient to state a cause of action for a deprivation of his due process rights. Helen Arnold, however, has no standing to assert a claim based on her son's suspension. She suffered no injury recognized by law. It was

not her constitutional rights which were violated. Consequently, the trial court properly dismissed her claim based on her son's suspension and her claim for $100,000 in punitive damages.

## VII. Summary

While we find the complaint sufficiently sets forth several claims, we emphasize that none of our findings indicate an opinion as to whether the appellants will or will not be able to present sufficient evidence in support of these claims to withstand a motion for summary judgment or prevail at trial. Here we briefly review the claims sufficiently pleaded in the complaint.

Jane Doe has sufficiently alleged claims under § 1983 for a violation of her privacy rights, first amendment free exercise rights and fourteenth amendment right to equal protection of the laws. John Doe sufficiently states a § 1983 claim for a violation of his first amendment free exercise rights and his fourteenth amendment right to equal protection. Both Jane Doe and John Doe also sufficiently state a § 1985(3) conspiracy claim against Rose and Powell individually. Helen Arnold and Charles Davis sufficiently state a § 1983 claim for interference with familial relations. Whether any liability may be imposed on the school board will depend on whether the school board had delegated to Rose final policymaking authority. No cause of action for conspiracy remains against the school board.

Helen Arnold as the mother of John Doe has no cause of action for the violation of John Doe's due process rights nor for punitive damages. John Doe, however, states a claim for a deprivation of his due process rights stemming from his disciplinary suspension. Therefore, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.