328 So.2d 560 (1976)
Terry A. DAY, a Minor, by His Father and Next Friend, Keith D. Day, et al., Appellants,
v.
NATIONWIDE MUTUAL INSURANCE CO., a Foreign Corporation, and Regina M. Bricker, Appellees.
No. 75-1048.
District Court of Appeal of Florida, Second District.
March 17, 1976.
Robert G. Shoemaker and Robert G. Varner, Jr. of Joseph H. Chambers, P.A., St. Petersburg, for appellants.
Donald V. Bulleit and Edward M. Waller, Jr., of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellees.
GRIMES, Judge.
This case is one of first impression in Florida. The issue is whether a cause of action in tort exists for prenatal injuries negligently inflicted where the injured child is born alive.[1]
On March 9, 1973, Regina Bricker's car collided with an automobile driven by Ann Day. At that time Ann Day was in her sixth week of pregnancy. Terry A. Day was born November 19, 1973, with severe cerebral damage.
The lower court dismissed the two counts of the complaint which sought recovery for injuries to Terry Day alleged to have been caused by the accident. The judge expressed a personal preference for the child's position but reasoned that the claim must be denied because neither the common law nor the case law of this state recognized a cause of action for prenatal injuries.
Initially, the courts of this country denied recovery of damages for injuries suffered by a child in its mother's womb. Dietrich v. Northampton, 1884, 138 Mass. 14, was the first case to deny recovery. The rationale for the decision was that the unborn child was part of its mother rather than an individual human being. The holding of Dietrich was precedent for sixty years.
In 1946, a U.S. District Court broke with Dietrich and held that a child born alive had a cause of action for prenatal injuries *561 sustained after viability. Bonbrest v. Kotz, D.D.C. 1946, 65 F. Supp. 138. This case began a trend towards allowing recovery for prenatal injuries where the child was born alive. Currently, at least thirty jurisdictions now recognize the right to recover for prenatal injuries,[2] and no court has held to the contrary for thirty years.[3]
A related issue over which there is less agreement is whether the accident must have occurred after the child becomes viable; that is, where it is capable of living apart from its mother. Some jurisdictions which first permitted claims for prenatal injuries following Bonbrest appeared to limit recovery to those injuries occurring after viability.[4] However, seventeen jurisdictions now permit an action to be maintained for negligently inflicted prenatal injuries without regard to viability,[5] and no jurisdiction which first seemed to limit recovery to those instances involving a viable fetus has later denied recovery to a child who survived an injury suffered before it became viable.[6]
The primary rationale for the classification of viability/non-viability is that proving causation is difficult when the injury occurs in the early stages of pregnancy. Thus, in discussing limitations upon the recovery for prenatal injuries, Prosser states:
"There is something to be said on both sides of this. Viability of course does not affect the question of the legal existence of the foetus, and therefore of the defendant's duty; and it is a most unsatisfactory criterion, since it is a relative matter, depending on the health of mother and child and many other matters in addition to the stage of development. Certainly the infant may be no less injured; and all logic is in favor of ignoring the stage at which it occurs. But with our knowledge of embryology what it is, as we approach the beginning of pregnancy medical knowledge, and therefore medical testimony and medical proof of causes, becomes increasingly unreliable and unsatisfactory, so that there is good reason for caution. This, however, goes to proof rather than principle; and if, as is undoubtedly the case there are injuries as to which reliable medical proof is possible, it makes no sense to deny recovery on any such arbitrary basis." Prosser, Torts, § 55 (4th Edition, 1971).
The issue is one of causation, not viability. Difficulty of proof should not prohibit the assertion of a cause of action.
The Restatement of Torts originally stated that one who negligently caused harm to an unborn child was not liable to the child for the harm. However, in its Tentative Draft No. 16 dated April 1970, the Council of the American Law Institute recommended a total revision of Section 869 so as to state the following:
"§ 869. HARM TO UNBORN CHILD.
"(1) ONE WHO TORTUOUSLY CAUSES HARM TO AN UNBORN CHILD IS SUBJECT TO LIABILITY TO THE CHILD FOR SUCH HARM IF IT IS BORN ALIVE."
The comments which follow clearly indicate that the rule is intended to apply regardless of viability.
*562 Appellees raise the issue that a fetus of six weeks is not a "person" in the constitutional law sense. They analogize to the case law concerning abortion, which holds that termination of pregnancy in the first trimester is within the pregnant woman's personal discretion. Therefore, if a fetus of six weeks is not a "person" for purposes of an abortion, how can it be a "person" for purposes of this lawsuit? This court is not persuaded by such logic.
The decision to have an abortion during the first trimester has been held to be private and personal to the individual woman. Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; Doe v. Bolton, 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201. The primary interest, at least in the early stages of pregnancy, is that of the woman and her right to privacy. But, Roe v. Wade and Doe v. Bolton, supra, also recognize that the interest of society increases with the development of the fetus to the point that states may proscribe abortions during the last trimester of pregnancy except where necessary to preserve the life or health of the mother.
Here, however, the primary concern is the child who has suffered an injury and who in many instances must go through life with an injury or some resulting deformity. Additionally, society also has a very direct concern. A child who is born alive but inflicted with a physical or mental injury or deformity is a potential public charge. Where the injury or deformity is caused by the fault of another, fairness dictates that the financial needs of such child should be borne by the tortfeasor rather than the taxpayer.
A child injured before birth and born alive is a person under the Florida and Federal Constitutions. As such, that person is entitled to all of the constitutional rights, privileges and protections afforded to all other persons.
Florida already recognizes property rights in an unborn child providing it is born alive. Shone v. Bellmore, 1918, 75 Fla. 515, 78 So. 605. A tort claim for a prenatal injury is no less important. We hold that a child born alive, having suffered prenatal injuries at any time after conception, has a cause of action against the alleged tortfeasor.[7] If the child is born alive, there is a relation-back to the time of injury in order for the infant person to maintain its cause of action.
This court is not unmindful of the possibly false or fraudulent claims the holding in this case could engender. However, the plaintiff will be bound by the burden or proving a direct causal link between the alleged tortious behavior of the defendant and the prenatal injuries. If such causation is not proven, the plaintiff will, of course, be denied recovery, just as in any other tort case. In this regard, we believe that comment d to Section 869 in the Tentative Draft of the Restatements is apropos:
"d. The rule stated in Subsection (1) is not limited to unborn children who are `viable' at the time of the original injury, which is to say, then capable of independent life, if only in an incubator. If the tortious conduct and the legal causation of the harm can be satisfactorily established, there may be recovery for any injury occurring at any time after conception. It is obvious, however, that in the present state of medical knowledge of embryology, as we approach the beginning of pregnancy medical testimony in proof of a causal connection becomes increasingly speculative, unreliable and unsatisfactory, and tends to become mere conjecture. For that reason a court may properly require more in the way of convincing evidence of causation when the injury is claimed to have occurred during the early weeks of pregnancy than *563 when it comes later. This is not a matter of viability, nor is there any fixed and definite line to be drawn at any particular state of development of the foetus."
The dismissal of Counts III and IV of the complaint is REVERSED.
BOARDMAN, Acting C.J., and SCHEB, J., concur.
NOTES
[1] The significance of the child being born alive is well illustrated in Stokes v. Liberty Mutual Insurance Company, Fla. 1968, 213 So.2d 695, which involved the claim for the wrongful death of a stillborn fetus.
[2] E.g., Womack v. Buckhorn, 1971, 384 Mich. 718, 187 N.W.2d 218; Scott v. McPheeters, Cal. App. 1939, 33 Cal. App.2d 629, 92 P.2d 678, reh. den'd., Cal. 1939, 33 Cal. App.2d 629, 93 P.2d 562; Tucker v. Howard L. Carmichael and Sons, Inc., 1951, 208 Ga. 201, 65 S.E.2d 909.
[3] See Smith v. Brennan, 1960, 31 N.J. 353, 157 A.2d 497.
[4] E.g., Woods v. Lancet, 1951, 303 N.Y. 349, 102 N.E.2d 691.
[5] E.g., Henry v. Jones, D.Mass. 1969, 306 F. Supp. 726; Sinkler v. Kneale, 1960, 401 Pa. 267, 164 A.2d 93.
[6] See Smith v. Brennan, supra.
[7] For further references in harmony with our view, see 40 A.L.R.3d 1222 and the note at 15 Fla.L.Rev. 527 (1963) entitled "The Case of the Prenatal Injury."