John CRUMPTON, IV, Plaintiff–
Appellant,

v.

Daryl GATES; Tom Bradley; Tom Red-din; Ed Davis; Herbert Boeckmann; Maxwell E. Greenberg; Barbara L. Schlei; Robert Talcott, et al., Defen-dants–Appellees.

No. 90–55117.

United States Court of Appeals,
Ninth Circuit.

Argued and Submission Deferred
April 1, 1991.

Resubmitted Oct. 25, 1991.

Decided Nov. 4, 1991.

Stephen Yagman, Yagman & Yagman, Venice, Cal., for plaintiff-appellant.

Jack L. Brown, Asst. City Atty., Los Angeles, Cal., for defendants-appellees.

Before BOOCHEVER, KOZINSKI and O'SCANNLAIN, Circuit Judges.

BOOCHEVER, Circuit Judge:

John Crumpton, IV, a six-year-old child, brought this civil rights action under 42 U.S.C. section 1983 against Los Angeles Police Chief Daryl Gates and several former police chiefs, current and former members of the Los Angeles Board of Police Commissioners, various known and unknown Los Angeles Police Department (LAPD) officers, Mayor Bradley, and the City of Los Angeles. Crumpton alleges that the killing of his father by an alleged LAPD "death squad" violated his own constitutional rights. The district court granted defendants' motion for summary judgment on the ground that, because Crumpton was a fetus at the time his father was killed, he was not a "person" within the meaning of 42 U.S.C. section 1983 and, therefore, was unable to bring the civil rights claim. We reverse and remand.

## BACKGROUND

In his complaint, Crumpton alleges that the LAPD had formed a "death squad," or "cadre of officers whose mission it was to execute persons targeted for execution by LAPD." According to Crumpton, from 1966 to the time of the filing of his complaint, this "death squad" followed those persons believed to be criminals who were "escaping the arm of the law in that they were not being convicted for crimes they had committed, and in that when convicted, their sentences were too short and/or inadequate." He alleges that the "death squad" allowed its targets to commit crimes, "and then easily on pretext execute[d] those persons."

Crumpton claims that on or about September 15, 1982, the individual officer defendants in this case functioned as a "death squad" and followed his father to a bank they knew he planned to rob. After robbing the bank, Crumpton contends, defendants pursued his father and fatally shot him in the back. At the time of the killing, Crumpton was a two month-old fetus; he was not born until April 23, 1983.

Crumpton brought this civil rights action for his own damages sustained as a result of the loss of his father, seeking compensatory and punitive damages, and injunctive relief in the form of either an order that the "death squad" disband or court supervision of "death squad" activities.

Defendants moved for summary judgment arguing that Crumpton, who was a fetus at the time his father was killed, was not a "person" as contemplated by 42 U.S.C. section 1983. Relying on *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the district court granted the motion for summary judgment on the ground that "a fetus is not a person under 42 U.S.C. section 1983 on whose behalf an action can be brought."

## DISCUSSION

This case poses a novel, purely legal question. Indeed, our research has uncovered no federal case on all fours. Specifically, we must decide whether a child may bring a section 1983 action based upon the unconstitutional killing of his father prior to the child's birth.

42 U.S.C. section 1983, derived from section 1 of the Civil Rights Act of 1871 (also referred to as the Ku Klux Klan Act of 1871), provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

Congress enacted section 1983 pursuant to its power under section 5 of the Fourteenth Amendment to adopt "appropriate legislation" to enforce the Fourteenth Amendment. *Quern v. Jordan*, 440 U.S. 332, 351 n. 3, 355, 99 S.Ct. 1139, 1150 n. 3, 1152, 59 L.Ed.2d 358 (1979) (Brennan, J., concurring). *See also Ngiraingas v. Sanchez*,

495 U.S. 182, 110 S.Ct. 1737, 1740, 109 L.Ed.2d 163 (1990).

■ Traditionally, the requirements for relief under section 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law. *See, e.g., Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Central to this case is a fifth requirement, that the plaintiff be a "citizen of the United States or other person." The only elements at issue in this case are the first and fifth.

■ Section 1983 does not create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes. *See, e.g., Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979) ("one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything"). *See also Cong. Globe*, 42d Cong., 1st Sess. app. 68 (remarks of Rep. Shellabarger), 481–82 (remarks of Rep. Wilson), 568 (remarks of Sen. Edmunds). Thus, a section 1983 plaintiff must allege an independent substantive basis for relief.

While the articulation of Crumpton's claim is not a model of clarity, we believe it sufficiently avers that the violation of his father's Fourth Amendment right "not to be subjected to the use of excessive force" thereby violated his own Fourteenth Amendment rights. While this type of claim has generated considerable confusion and disagreement, *see generally* 1 M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* §§ 13.3–13.7 (2d ed. 1991), we have concluded such claims are not based on derivative rights, but rather assert an independent violation of a survivor's personal federally protected rights. *See Smith v. City of Fontana*, 818 F.2d 1411, 1418–20 (9th Cir.), *cert. denied*,

484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

■ In *Fontana,* while we did not permit a decedent's children to maintain their father's Fourth Amendment cause of action for the alleged use of excessive force by police that caused his death, we did permit them to assert a substantive due process claim based on the violation of their right to familial companionship and society. We characterized the children's interest as "a cognizable liberty interest," which "the state has no legitimate interest in interfering with ... through the use of *excessive* force." *Id.* at 1419–20. We found our conclusion substantially bolstered by the legislative history of section 1983's precursor, the Ku Klux Klan Act, described by one of its proponents "as a remedy for wrongs, arsons, and murders done. This is what we offer to a man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; *to the children whose father has been killed, as a remedy.*" *Id.* at 1419 (alteration in original) (quoting *Cong. Globe,* 42d Cong., 1st Sess. 807 (1871) (statement of Rep. Butler)).[1] In light of our holding in *Fontana* and the powerful evidence that Congress intended to provide survivors with a remedy for their own constitutional injuries occasioned by the wrongful killing of a parent, we find that Crumpton has adequately alleged a deprivation of constitutional proportions.

■ The crux of this case, however, is not the nature of the constitutional right asserted, but rather who may bring a suit under 42 U.S.C. section 1983. Defendants

contend that Crumpton is not a proper party under section 1983 because he was a fetus and not a "person" at the time his father was killed. In support, they cite the Supreme Court's statement in *Roe v. Wade* that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." *Roe v. Wade,* 410 U.S. 113, 158, 93 S.Ct. 705, 729, 35 L.Ed.2d 147 (1973). Defendants argue that the legislative history of section 1983 indicates that Congress intended the same meaning of "person" to apply in section 1983 as in the Fourteenth Amendment, which section 1983 was enacted to enforce. Indeed, some other jurisdictions have indicated that a fetus is not a "person" for section 1983 purposes. *See Arnold v. Board of Educ.,* 880 F.2d 305, 312 n. 9 (11th Cir.1989); *Ruiz Romero v. Gonzalez Caraballo,* 681 F.Supp. 123, 125–26 (D.P.R.1988); *Harman v. Daniels,* 525 F.Supp. 798, 800–01 (W.D.Va.1981); *Poole v. Endsley,* 371 F.Supp. 1379, 1382 (N.D.Fla.1974), *aff'd in part,* 516 F.2d 898 (5th Cir.1975); *McGarvey v. Magee–Womens Hosp.,* 340 F.Supp. 751 (W.D.Pa.1972), *aff'd,* 474 F.2d 1339 (3d Cir.1973).[2]

The question of whether a fetus is a "person" entitled to sue under section 1983, however, is not dispositive in this case, and defendants' citation to *Roe, Poole,* and *McGarvey* is inapposite. Each of those cases involved the rights of a fetus *qua* fetus. Whether Crumpton, a six-year-old child, may assert a section 1983 cause of action based upon the killing of his father by state actors is an entirely different proposition, one for which we have found

---

1. Although we did not mention it in *Fontana,* we believe that the text of section 1983 itself may be read to allow for the bringing of such suits by proper third parties. While § 1983 speaks of a "person" subjecting a "citizen ... or other person" to a deprivation of civil rights, it specifically makes a remedy available to "the party injured." Although we could read "the party injured" merely as a shorthand reference to the civil rights victims who could be *either* citizens or persons, we believe that the better reading, consonant with the legislative history, is that Congress intended by this provision to allow survivors to sue for their harm stemming from the deprivation of a loved one's civil

rights. *See* Steinglass, *Wrongful Death Actions and Section 1983,* 60 Ind.L.J. 559, 644–54 (1985).

2. We note that the notion that a fetus is not a person entitled to assert a cause of action has been limited to the section 1983 context. It has in no way called into question the law of the many states that provide causes of action for injury to a viable fetus, regardless of whether it is later born alive. *See, e.g., Humes v. Clinton,* 246 Kan. 590, 792 P.2d 1032, 1036 (1990) ("A majority of states allow an action for wrongful death of a viable fetus even when it is stillborn as a result of the prenatal injuries.").

no precedents.[3]

Aside from their reliance on these "fetus *qua* fetus" cases, defendants have cited federal decisional law closer in point, *Harman*, 525 F.Supp. 798. *See also Ruiz Romero*, 681 F.Supp. 123. These two cases address whether an infant can sue for direct physical prenatal injuries caused while *in utero*. In both cases, police beat pregnant mothers, causing physical injuries to the fetuses. Both concluded that at the time the injuries occurred the fetuses were not "persons" for purposes of section 1983 and, therefore, they could not maintain actions for the violation of their constitutional rights because they had no such rights at the time of injury. *But see Douglas v. Town of Hartford*, 542 F.Supp. 1267 (D.Conn.1982) (allowing suit to proceed on facts similar to *Harman*).

Even assuming, *arguendo*, that *Harman* and *Ruiz Romero* were correctly decided, a presumption we question *infra*, the principle articulated in those cases compels reversal of the district court's grant of summary judgment against Crumpton. In *Harman* and *Ruiz Romero*, the plaintiff's injury was complete at the moment the wrongful act, a physical attack, injured the fetus. This case, however, does not involve a physical injury to a fetus. Here, the substantive constitutional injury upon which Crumpton relies is not a Fourth Amendment interest in freedom from unreasonable force, but a substantive due process liberty interest in having familial relations with a parent. As a result, we must focus, as *Harman* and *Ruiz Romero* suggest, on the time at which the constitutional injury occurred.

Viewing the allegations in the light most favorable to Crumpton, as we must on review of summary judgment, Crumpton's father may have sustained a constitutionally cognizable Fourth Amendment deprivation when shot by police; his father's injury, like Harman's, occurred contemporaneously with the wrongful act. But Crumpton cannot assert his father's Fourth Amendment rights. *See Fontana*, 818 F.2d at 1417 (" 'Fourth Amendment rights are personal rights which ... may not be vicariously asserted.' ") (quoting *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969)). He must assert his own constitutional right. Here, Crumpton claims unwarranted state interference with his rights to familial companionship and society. Because Crumpton was a fetus at the time his father was killed, the injury to this right, unlike the injury to a right to freedom from excessive force, did not occur immediately upon the commission of the wrongful act, the father's killing. Because a child has familial relationships only after birth, it follows that the child's right to familial relationships exists only after birth.

Logic supports this position. Assume parent and child were run over and killed by a driver who was at fault. While both estates could sue for wrongful death, neither could make out a claim for loss of familial companionship, for neither would appreciate the loss of the other. Similarly, here a familial right cannot arise until a fetus is born and suffers from not having a parent. Thus, although the wrongful act occurred while Crumpton was *in utero*, the injury or suffering which flowed from that wrongful act occurred postnatally. *Angelini v. OMD Corp.*, 410 Mass. 653, 575 N.E.2d 41, 43–44 n. 6 (1991) ("The cause of action in a parental consortium case cannot accrue until the child is born because the loss of consortium cannot occur until the child is born."). Therefore, even under the reasoning of *Harman*, Crumpton may sue. He was a "person" when the injury occurred, at his birth. Recognizing the temporal distinction, when it exists, between a wrongful act and the injury it ultimately

---

**3.** Notwithstanding defendants' mistaken apprehensions to the contrary, this inquiry is distinct from Article III standing considerations. Article III standing is not an impediment to the institution of this action. All Crumpton need do to clear the Article III hurdle is (1) clearly demonstrate he has suffered an "injury in fact"; (2) show his injury to be fairly traceable to defendants' actions; and (3) show that it " 'is likely to be redressed by a favorable decision.' " *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990). (citations omitted). This he has easily done.

causes is no new concept. It is one consistent with common law tort principles. The Supreme Court has sanctioned the resort to tort analogies in establishing the elements of a section 1983 cause of action. *See Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). *See also Monroe v. Pape*, 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961) (reading section 1983 against background of tort liability in which a person is "responsible for the natural consequences of his actions"), *overruled on other grounds by Monell v. New York City Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, it is entirely appropriate that we look to the common law.

In *Vaughn v. J.C. Penney, Inc.*, 822 F.2d 605, 609–10 (1987), the Sixth Circuit recognized that, although the term " 'wrongful act' is often thought to be synonymous with the term 'injury,' " if an injury does not result immediately, the cause of action arises upon its occurrence. *See also Renslow v. Mennonite Hosp.*, 67 Ill.2d 348, 10 Ill.Dec. 484, 493, 367 N.E.2d 1250, 1259 (1977) (Dooley, J., concurring) (finding re-

sulting injury to daughter actionable where hospital negligently transfused blood in woman years earlier, noting that the "time gap between the wrongful act and the suffering is immaterial[;] [t]he cause of action is uniformly created not at the time of the negligent act, but only when the injury has been sustained"); *Jorgensen v. Meade Johnson Lab.*, 483 F.2d 237, 239–40 (10th Cir.1973) (reversing district court decision that preconception ingestion of oral contraceptives which altered chromosomal structure of mother was not actionable by deformed twins, noting that "the case should not be viewed from the standpoint of the alleged effects on the mother, ... but from that of the twins and the injuries allegedly inflicted on them").[4]

We hold that Crumpton's injury and cause of action did not arise until his birth. In light of this holding we are not required to reach Crumpton's claim that state law should be incorporated into section 1983 for the purpose of allowing him to maintain his action.[5] Moreover, we need not decide today whether *Harman* was incorrectly decided.[6] Permitting Crumpton to recover

---

**4.** We need not decide, for purposes of this case, whether injuries due to acts occurring prior to conception may be cognizable in a section 1983 action. Although the *Renslow* and *Jorgensen* courts sanctioned recovery for harms arising from pre-conception acts, at least one court has stated that, as a matter of policy, it will not allow compensation for such harms. *See Angelini*, 575 N.E.2d at 43–44.

**5.** 42 U.S.C. § 1988 provides that, where federal law is "deficient" with respect to accomplishment of the goals of the federal civil rights laws, a federal court should apply the law of the forum state so long as it is "not inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988 (1988). *See also Chardon v. Fumero Soto*, 462 U.S. 650, 657, 103 S.Ct. 2611, 2616, 77 L.Ed.2d 74 (1983) (noting that Congress "plainly instructed the federal courts to refer to state law when federal law provides no rule of decision"). Virtually every jurisdiction, including California (the forum state for this cause of action), "currently allows children born alive to recover in tort for prenatal injuries caused by third parties...." *Int'l Union, U.A.W. v. Johnson Controls, Inc.*, — U.S. —, 111 S.Ct. 1196, 1210–11, 113 L.Ed.2d 158 (1991) (White, J., joined by Rehnquist, C.J., and Kennedy, J., concurring in part and concurring in judgment). *See also* W. Keeton, D. Dobbs, R.

Keeton & D. Owen, *Prosser and Keeton on Torts* § 55, at 368 (5th ed. 1984); Restatement (Second) of Torts § 869 app., reporter's note at 79 (1982). By calling for the application of section 1988, Crumpton no doubt hopes to enjoy the benefits of the liberal state law standard allowing postnatal recovery for prenatal injuries even when the "injury" actually occurred *in utero*. Crumpton has not pointed us to a deficiency in federal law. Federal law certainly is not "deficient" with respect to the meaning of "person" under section 1983. But, as we have already said, this is not the dispositive question. Perhaps Crumpton means to suggest that federal law is "deficient" in its failure to distinguish when a right of action arises with respect to the injuries of a fetus that is ultimately born. Whether federal law is "deficient" for purposes of § 1988 because it has failed to address the issue of whether fetuses may have rights contingent upon birth, is a question we need not answer in the course of deciding this case.

**6.** Because we have noted in different contexts that a right of action does not arise until a party has a right to enforce its claim, *see, e.g., Norco Constr. Inc. v. King County*, 801 F.2d 1143, 1146 (9th Cir.1986), and because section 1983's coverage is to be broadly construed to effectuate its remedial purposes, *see, e.g., Golden State Transit v. City of Los Angeles*, 493 U.S. 103, 113, 110

merely recognizes that a child should be compensated for the federally cognizable injuries he or she must bear. A contrary rule flies in the face of the remedial purposes of section 1983.

## CONCLUSION

Because Crumpton's injury arose at birth, even under the most restrictive view of the scope of section 1983, he is entitled to proceed as a proper party in his federal civil rights suit. While we, of course, express no opinion on the merits of the claim, we reverse the summary judgment, which was based on Crumpton's status as a fetus when his father was killed.

REVERSED AND REMANDED.

---

S.Ct. 444, 452, 107 L.Ed.2d 420 (1989); *Cong. Globe*, 42d Cong., 1st Sess. app. 68 (1871), we have grave doubts about the *Harman* court's proposition that infants injured *in utero* and

later born alive simply must bear their federally cognizable afflictions without the hope of remedy.