888 So.2d 712 (2004)
Michael E. LARUSSO, Felipe S. Jonior, Mark Samarel, and Southern Group Indemnity, Inc., a Florida corporation, Appellants,
v.
Brian GARNER, individually, and as natural parent and guardian of Braden Daniel Garner, a minor, Ana Martinez Garner, Hardrives of Delray, Inc., Metric Engineering Company, Florida Department of Transportation, Statewide Adjusters, Inc., a Florida corporation, and Parkway Insurance Agency, Inc., a Florida corporation, Appellees.
Nos. 4D01-912, 4D01-1082, 4D01-1115.
District Court of Appeal of Florida, Fourth District.
December 8, 2004.
*714 Hinda Klein of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for appellants Michael E. Larusso and Felipe S. Jonior.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for appellant Mark Samarel.
Doreen E. Lasch of the Law Offices of Roland Gomez, Miami Lakes, and David B. Pakula of David B. Pakula, P.A., Weston, for appellant Southern Group Indemnity, Inc.
Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Gregg A. Schlesinger and Todd R. McPharlin of Sheldon J. Schlesinger, P.A., Fort Lauderdale, for appellees Brian Garner and Braden Daniel Garner.
ON SOUTHERN GROUP INDEMNITY, INC.'S MOTION FOR REHEARING, CLARIFICATION, CERTIFICATION AND REHEARING EN BANC AND BRIAN AND BRADEN GARNER'S MOTION FOR REHEARING AND/OR CLARIFICATION
PER CURIAM.
We grant Southern Group Indemnity's motion as to rehearing and clarification and deny Larusso, Jonior and Samarel's motion as to certification and rehearing en banc. As a result, we withdraw our previous opinion and substitute the following opinion in its place.
Southern Group Indemnity, Inc. ("SGI") appeals a final judgment entered in favor of Brian Garner ("Brian") and his son, Braden Garner ("Braden"), for damages awarded after the jury determined they were entitled to uninsured motorist protection. Felipe Jonior ("Jonior"), Mark Samarel ("Samarel") and Michael Larusso *715 ("Larusso") seek review of the awards to Braden for his injuries and loss of consortium and to Brian for loss of consortium.
SGI raises multiple issues, but we address only its contention that the court erred in denying its motion for directed verdict on the availability of uninsured motorist coverage ("UM"). We agree with SGI that because Brian signed a form, approved by the Department of Insurance, explaining the limitations of coverage, Brian knowingly accepted those limitations, which excluded recovery for injuries in this accident. As to the other defendants, we hold that Braden is entitled to loss of consortium damages as a result of his mother's injuries, even though the injuries occurred while his mother was pregnant with Braden. However, we reverse the award of filial consortium damages to Brian for Braden's injuries because they were not limited to the period of Braden's minority.
The appeals in this case stem from a tragic accident that occurred on October 27, 1994. Ana Martinez Garner ("Ana"), Brian's wife of approximately two weeks, who was three-months pregnant with Braden, was driving a Toyota Tercel that she alone owned. She was stopped at the traffic light at the intersection of Glades Road and State Road 441 in Boca Raton, an intersection that was under construction. Jonior, driving a vehicle owned by Larusso, turned from 441 onto Glades Road and collided with the vehicle Samarel was driving through the intersection. Samarel's vehicle spun out of control as a result of the collision and crashed into Ana's Tercel on the driver's side. As a result of this second collision, Ana sustained severe brain damage and bodily injury. Despite these serious injuries and a resulting coma, Ana carried Braden to term.
Ana, through a temporary guardian necessitated by her injuries, filed an automobile negligence personal injury lawsuit against Larusso, Jonior, Samarel, the Florida Department of Transportation, and the construction companies at work on the intersection (Metric and Hardrives). Brian, individually and as parent and guardian of his son Braden, sued the same defendants as well as SGI, the automobile insurance carrier that insured his Toyota 4Runner. The lawsuits were consolidated for trial. During the litigation, Ana and Brian were divorced. Because Ana settled her lawsuit, her claims are not the subject of this appeal.
On Braden's behalf, Brian filed personal injury claims for Braden's organic brain injury sustained both in utero during the accident and as a result of subsequent treatment, as well as a claim for loss of consortium regarding Braden's relationship with his mother. Brian filed his own claims for loss of consortium as to his wife and son due to their permanent injuries. As to SGI, Brian and Braden sought uninsured motorist benefits under SGI's policy insuring Brian's vehicle.
SGI moved for summary judgment, asserting that at the time of Ana's accident Brian no longer had automobile insurance coverage under the policy on his vehicle because: (1) Brian had cancelled his policy effective prior to Ana's accident on October 27, 1994, and (2) as a matter of law, Brian had no insurable interest after he sold his 4Runner on October 12, 1994. Summary judgment was denied and the case proceeded to trial.
At the conclusion of the trial, SGI moved for directed verdict arguing, inter alia, that even if Brian's SGI policy was in effect at the time of Ana's accident, the uninsured motorist coverage in Brian's policy did not cover the accident. The *716 trial court denied the motion and submitted the case to the jury.
The jury found, inter alia, that Brian's policy was not cancelled effective on or before the October 27 accident date, that Brian provided notice of the accident within thirty days of October 12 to the insurance agency or insurance company, and that the SGI policy provided uninsured motorist benefits for the October 27 accident.
Regarding liability, the jury found Jonior to be thirty percent at fault for the accident, Samarel to be sixty percent at fault, and divided the remaining ten percent of fault between the construction companies working on the intersection. Braden was awarded one million dollars for future lost earning capacity and future medical treatment for his injuries sustained in utero. He was also awarded three million dollars for the loss of his mother's consortium and two million dollars for permanent injuries sustained in the accident. Brian was awarded $300,000 for the loss of Ana's consortium and $500,000 for the loss of Braden's consortium. Larusso, Jonior, and Samarel appeal these verdicts on grounds that an as yet unborn fetus cannot claim loss of consortium and that Brian and Braden's consortium damages should have been limited to the duration of Braden's minority.

I. Uninsured Motorist Protection
Although SGI raises on appeal both the denial of its motion for summary judgment and the denial of its motion for directed verdict as error, we reverse based only on the denial of the motion for directed verdict. Assuming, as the jury found, that Brian's policy was in effect at the time of the accident, uninsured motorist protection was unavailable to Brian and Braden under the policy provisions. Brian knowingly accepted the policy limitations of that coverage, one of which was that UM coverage was not available if a family member was injured while in a vehicle that was not insured under the SGI policy even if the vehicle was owned by the insured or the family member. Here, Ana's vehicle, in which she was injured, was insured under a separate policy, not the SGI policy. Therefore, UM coverage under Brian's policy was unavailable.
In reviewing a motion for directed verdict, the following standard applies:
A directed verdict for the defendant at the close of evidence is proper only when the evidence, viewed in a light most favorable to the plaintiff, shows that a jury could not reasonably differ as to the existence of any material fact and that the defendant is entitled to judgment as a matter of law.
Plotch v. Gregory, 463 So.2d 432, 435 (Fla. 4th DCA 1985) (citations omitted).
At trial, Brian contended that the manner in which the uninsured motorist election form was filled out, and his signature thereon, made the form ambiguous. Therefore, he should not be charged with a knowing acceptance of the limitations contained in the form. It is undisputed that in the upper portion of the form, Brian selected boxes both accepting and rejecting uninsured motorist coverage. In the lower portion of the form, Brian selected a box for non-stacked uninsured motorist coverage. That portion of the form also included certain limitations on uninsured motorist protection. SGI contends that the selection of both boxes in the upper portion of the form did not create an ambiguity, but even if it did, there was no contention that there was any ambiguity in selecting non-stacked coverage in the lower portion of the form. On the other hand, Brian asserts that the fact that two boxes were checked in the upper portion (in addition *717 to other alterations) created an ambiguity, and therefore prevented him from making an informed and knowing selection of non-stacked uninsured motorist benefits in the lower portion of the form.
We reject Brian's contention on this point. The fact that there was an ambiguity as to whether Brian selected uninsured motorist coverage in the upper portion of the form did not create an ambiguity as to what type of uninsured motorist coverage he selected in the lower portion of the form. In the lower portion of the form, Brian clearly checked the box for non-stacked uninsured motorist coverage and, in fact, received and remitted the premium for such coverage. Therefore, Brian accepted UM coverage and agreed to non-stacked coverage.
SGI argued that because Brian signed the form containing the limitations of coverage, it is entitled to the conclusive presumption contained in section 627.727(9), Florida Statutes (1993), that a knowing acceptance of UM limitations was made. In response, Brian contends that the court properly denied the motion for directed verdict because there was a dispute as to whether the form on which the election was made was approved by the Department of Insurance. Without approval of the form, SGI is not entitled to the conclusive presumption of knowing acceptance. See Omar v. Allstate Ins. Co., 632 So.2d 214, 216 (Fla. 5th DCA 1994) (discussing insurer's burden to demonstrate informed election to benefit from presumption).
Section 627.727(9), Florida Statutes (1993), permits an insurance company to offer policies in which uninsured motorist coverage is limited in certain circumstances. The pertinent parts of that section state:
(9) Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the department, establishing that if the insured accepts this offer:
...
(d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
...
In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form approved by the department, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations.

(Emphasis added). SGI contended that because Ana's vehicle was never insured under Brian's policy, the limitation in section (9)(d) applied, and no uninsured motorist protection under Brian's policy was available.
The form Brian signed stated:
You have the option to purchase at a reduced rate, non-stacked (limited) type of Uninsured Motorist Coverage. Under this form if injury occurs in a vehicle owned or leased by you or any family member who resides with you, this policy will apply only to the extent of coverage (if any) which applies to that vehicle in this policy. If an injury occurs while occupying someone else's vehicle, or you are struck as a pedestrian, you are entitled to select the highest limits of uninsured *718 motorist coverage available on any one vehicle for which you are a named insured, insured family member, or insured resident in the insured's household. This policy will not apply if you select the coverage available under any other policy issued to you or the policy of any other family member who resides with you.
If you do not elect to purchase the non-stacked form, your policy limit(s) for each motor vehicle are added together (stacked) for all covered injuries. Thus, your policy limits would automatically change during the policy term if you increase or decrease the number of autos covered under the policy.
That this form was approved by the Department of Insurance was never a disputed issue of fact at trial. Both Brian's insurance expert and SGI's expert testified without objection that all forms, including the applications, were approved by the Department. During the argument on the motion for directed verdict, SGI told the court, without contest by Brian's attorney, "[i]t's undisputed that this is a form approved  their own expert testified to the policy, the application." In short, there was undisputed proof that the form was approved by the Department, and it was signed by Brian. Therefore, as a matter of law, SGI was entitled to the statutory conclusive presumption that Brian's rejection of stacked coverage was knowingly made.
We also conclude that the language used in the form sufficiently informed Brian of the limitations on the uninsured motorist coverage. "The construction of an insurance policy to identify the scope of coverage is a question of law subject to de novo review on appeal." Roberts v. Fla. Lawyers Mut. Ins. Co., 839 So.2d 843, 845 (Fla. 4th DCA 2003).
The legislature granted the Department of Insurance the authority to approve or disapprove forms used by each insurance company to offer or limit UM coverage. Insurance companies rely on Department of Insurance approval in taking these applications and issuing insurance based upon the rejection of uninsured motorist protections as indicated on these forms. Lower premiums are charged as a result of such rejections. So that the insurer can adequately establish its risks and charge appropriate premiums, the Legislature created a conclusive presumption that the signing of the approved form established a knowing acceptance of the limitations. Therefore, unless circumstances such as fraud, trickery, or forgery are present, the insured is bound by his signature on the form.[1]See § 627.727(9); State Farm Mut. Auto. Ins. Co. v. Parrish, 873 So.2d 547, 550 (Fla. 5th DCA 2004). No evidence of fraud or trickery is present here.
We agree with Mangual v. State Farm Mutual Automobile Insurance, 719 So.2d 981 (Fla. 5th DCA 1998), in which the court held that a very similar provision approved by the Department of Insurance was sufficient notice to the insured of the limitations of the policy. In that case, the application stated: "If injury occurs in a vehicle owned or leased by you or a relative who lives with you, only the policy, if any, on that vehicle applies." 719 So.2d at 982. Compare this language to the application language in this case: "If injury occurs in a vehicle owned or leased by you or any family member who resides with you, this policy will apply only to the extent of coverage (if any) which applies to that vehicle in this policy." In Mangual, the court held that the language informed *719 the insured of the limitation contained in section 627.727(9)(d). Id. at 983. It reasoned that "[a]lthough [the application] does not recite subsection (9) in full, or any of paragraph (d), it nonetheless appears to provide sufficient notice as to the coverage question at issue by informing Mangual's parents that if injury occurs in a vehicle owned by a relative who lives with them, only the policy, if any, on that vehicle applies." Id. As the same circumstance is present in this case, we agree with Mangual.
The trial court erred in failing to direct a verdict for SGI on the issue of uninsured motorist protection. The evidence was undisputed that Brian signed a Department of Insurance form containing the limitation that no uninsured motorist protection was available where injury occurred in a vehicle owned by a family member but not insured under the SGI policy. SGI was entitled to the conclusive presumption that this was a knowing acceptance of this limitation. We therefore reverse the judgment against SGI on Brian's and Braden's claims.

II. Loss of Consortium Awards
Larusso, Samarel, and Jonior claim that the loss of consortium awards are in error. The three appellants raise two issues regarding these awards: (1) whether Braden was entitled to recover loss of consortium damages in regard to his relationship with his mother, Ana, and (2) whether the duration and amount of Braden's parental consortium award and Brian's filial consortium award were properly calculated.
We first address the issue of Braden's entitlement to damages for loss of parental consortium. In Florida, children do not have a common law loss of consortium claim for their parents. See Zorzos v. Rosen, 467 So.2d 305, 307 (Fla.1985). However, Florida established a child's claim for loss of parental consortium through statute:
A person who, through negligence, causes significant permanent injury to the natural or adoptive parent of an unmarried dependent resulting in a permanent total disability shall be liable to the dependent for damages, including damages for permanent loss of services, comfort, companionship, and society.
§ 768.0415, Fla. Stat. (1994).
As Braden was not born, but was only a fetus at the time of injury, the three appellants argue that he was not an "unmarried dependent" within the meaning of the statute, precluding an award of loss of consortium damages for his mother's injuries. Because Florida follows the "born alive" doctrine with respect to the rights of minor children to seek compensation for injuries occurring to them or their parents, we conclude that Braden is entitled to sue for loss of consortium damages related to his mother's injuries.
Florida allows a child born alive to recover damages for its own injuries occurring when it was a fetus, regardless of viability. See Day v. Nationwide Mut. Ins. Co., 328 So.2d 560, 562 (Fla. 2d DCA 1976). The Day court held that "a child born alive, having suffered prenatal injuries at any time after conception, has a cause of action against the alleged tortfeasor." Id. The court reasoned, "If the child is born alive, there is a relation-back to the time of injury in order for the infant person to maintain its cause of action." Id. (footnote omitted). A child born alive may also receive compensation for a parent's injury or death under the Workers' Compensation statute. See C.F. Wheeler Co. v. Pullins, 152 Fla. 96, 11 So.2d 303, 305 (1942).
A child born alive may recover damages under the Wrongful Death Act *720 for a parent killed shortly before the child's birth. See Ellis v. Humana of Fla., Inc., 569 So.2d 827, 828-29 (Fla. 5th DCA 1990). In Ellis, a mother brought a wrongful death action on behalf of herself and her son born six weeks after the death of his father. The trial court granted summary judgment on the child's claim, determining that the son was not a "minor child" or "survivor" within the meaning of the Wrongful Death Act. The defendants argued that because the Act was in derogation of common law, the statute must be strictly construed, (similar to the argument presented by the three appellants here). Had the Legislature intended to include an unborn fetus within the protection of the Act, it would have done so.
The fifth district rejected that argument, stating that because the Wrongful Death Act was remedial in nature, it should be liberally construed. Id. at 828. The court held that the unborn child was entitled to recovery under the Wrongful Death Act once born alive. Id. at 829. It reasoned,
It seems more consistent with the legislative intent to hold that the minor child of the decedent (even if unborn at the time of decedent's death) is a survivor under the act. The rights of such child, inchoate at the time of the wrongful death, become fully vested upon the occurrence of its live birth. This holding seems consistent with the reasoning in Rahn v. AMP, Inc., 447 So.2d 929 (Fla. 3d DCA 1984) (an action for wrongful death brought by a posthumous child must be brought within two years from the death of the decedent not from the birth of the child) and Whitefield v. Kainer, 369 So.2d 684 (Fla. 4th DCA 1979) (a posthumous illegitimate child is not a "survivor" under the wrongful death act unless the father has recognized responsibility for the child's support).
Id. at 828-29.
Similarly, section 768.0415 is remedial in nature, providing a remedy for a wrong that causes injury to a child born alive through the loss of his mother's companionship and parental guidance. Had the injury to the mother occurred immediately after childbirth, there would be no question that the child would be entitled to pursue a loss of consortium claim. We see no reason that the minor child cannot pursue a loss of consortium claim, once born, because the injury to his mother has caused a loss of his mother's companionship after his birth.
Other courts have considered the right to recover for loss of consortium or wrongful death of a parent where injury to the parent occurs prior to the birth of the child. In Angelini v. OMD Corp., 410 Mass. 653, 575 N.E.2d 41, 45-46 (1991), the court held that a child conceived before his or her parent suffered a non-fatal injury could recover for loss of parental consortium damages. The court noted that the injury to the child, namely the loss of the parental companionship and guidance, occurs after the birth of the child. 575 N.E.2d at 45.
Likewise, Crumpton v. Gates, 947 F.2d 1418, 1424 (9th Cir.1991), held that a child could assert a section 1983 cause of action for the killing of his father, notwithstanding that the child was a fetus at the time of the father's death. Consistent with Angelini, the court reasoned that the child's injury and the cause of action for loss of family companionship did not arise until the child's birth. 947 F.2d at 1422-23.
The well-established law supports Braden's claim that he is entitled to seek compensation for his injury and damage as the result of the injuries to his mother. Consistent with precedent, we hold that a *721 child born alive is entitled to claim loss of consortium damages under section 768.0415 for permanent injuries sustained by his or her parent that result in a permanent total disability as prescribed by statute, notwithstanding that the child was only a fetus at the time of injury to the parent. Those damages, which do not accrue until the loss of parental companionship occurs upon the live birth of the child, relate back to the time of injury. See Day, 328 So.2d at 562.
In their second issue, appellants claim that the court erred in calculating the consortium damages awarded to Brian for Braden's injuries because the court did not limit the damages to the period of Braden's minority. Filial consortium damages are limited to the period of the child's minority by common law. See Broward Co. Sch. Bd. v. Cruz, 761 So.2d 388, 396 (Fla. 4th DCA 2000), aff'd, 800 So.2d 213 (Fla.2001), abrogated on other grounds by Grenitz v. Tomlian, 858 So.2d 999 (Fla.2003). Brian concedes this point. Therefore, we reverse and remand Brian's award for loss of filial consortium for remittitur to Braden's years of minority, or a new trial.
Braden's claim for loss of his mother's consortium, however, is not common law, making Cruz inapplicable. Section 768.0415 speaks only to who may bring the claim, not to the extent of damages. The statute specifically includes "damages for permanent loss of services, comfort, companionship, and society." § 768.0415 (emphasis added). Because the statute does not limit damages, we decline to limit damages to the duration of minority.[2] This would be a task for the Legislature rather than for this court.
In sum, we reverse the denial of SGI's motion for directed verdict for entry of a judgment in favor of SGI. We reverse Brian's filial consortium award for remittitur or new trial. We affirm Braden's parental consortium award. We affirm all other issues not addressed in this opinion.
Affirmed in part, reversed in part, and remanded for remittitur.
WARNER, J., and HARNAGE, HENRY H., Associate Judge, concur.
GUNTHER, J., concurs in part, dissents in part, with opinion.
GUNTHER, J., concurring in part, dissenting in part.
I concur in the majority's conclusions regarding the consortium awards and the affirmance of the denial of the summary judgment. However, I respectfully dissent regarding the majority's reversal of the denial of the motion for directed verdict.
SGI's motion for directed verdict was based on the argument that even if Brian's SGI policy were in effect at the time of Ana's accident, Brian's uninsured motorist coverage did not cover the accident.
The question I confront in reviewing the denial of this motion is whether Brian's election of non-stacked uninsured motorist coverage in the lower portion of the form is knowing, which is partially a function of the form. Section 627.727(9) provides that the signature of an insured raises the conclusive presumption that a knowing election was made; however, in order for that presumption to operate, the form must be approved by the Florida Department of Financial Services.[3]See also Zupan v. *722 Nationwide Mut. Fire Ins. Co., 710 So.2d 594, 595 (Fla. 4th DCA 1998). It is an insurance company's burden to demonstrate that an election form complies with the statutory requirements in order to benefit from the presumption. See Omar v. Allstate Ins. Co., 632 So.2d 214, 216 (Fla. 5th DCA 1994) (discussing the insurer's burden to demonstrate informed election to benefit from presumption).
In determining whether SGI satisfied its burden, I consider the language of the form. Brian contends that SGI failed to comply with section 627.727(9) when limiting coverage in a manner recognized by section 627.727(9)(d). See GEICO v. Douglas, 627 So.2d 102, 103 (Fla. 4th DCA 1993). Subsection (d) provides:
Insurers may offer policies of uninsured motorist coverage containing policy provisions, in language approved by the office, establishing that if the insured accepts this offer:
(d) The uninsured motorist coverage provided by the policy does not apply to the named insured or family members residing in her or his household who are injured while occupying any vehicle owned by such insureds for which uninsured motorist coverage was not purchased.
Based on the notice requirements of section 627.727(9), for any limitation or exclusion to be placed on the uninsured motorist coverage available to an insured, such as that permitted by subsection (d), it must be stated in a form approved by the department in a manner that expresses "the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations." To allow otherwise would be to permit insurance companies to provide a limited form of uninsured motorist coverage which is contrary to our public policy preference for unlimited uninsured motorist coverage. See Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 83 (Fla.2000); Mullis v. State Farm Mut. Auto. Ins. Co., 252 So.2d 229, 233-234 (Fla.1971), superseded by statute on other grounds as stated in, Carbonell v. Auto. Ins. Co. of Hartford, Conn., 562 So.2d 437 (Fla.3d DCA 1990).
The form at issue here states the following, which SGI contends is an expression of the subsection (d) limitation: "Under this form if injury occurs in a vehicle owned or leased by you or any family member who resides with you, this policy will apply only to the extent of coverage (if any) which applies to that vehicle in this policy." Additionally, SGI maintains that the alternative to non-stacked coverage was revealed on the form by the following language: "If you do not elect to purchase the non-stacked form, your policy limit(s) for each motor vehicle are added together (stacked) for all covered injuries."
I reject SGI's contentions, and conclude that it did not carry its burden to demonstrate informed consent by Brian. SGI's cited language does not clearly express the limitation of subsection (d). The limitation language does not clearly indicate that the limitation is intended "to prevent the situation in which an insured resides in a household with more than one vehicle but elects to cover only one vehicle and then seeks to recover for injuries suffered in another vehicle under the policy." Akel v. Dorcelus, 793 So.2d 1049, 1053 (Fla. 4th DCA 2001). The form may make a definitional *723 distinction between stacked and non-stacked coverage, but it does not explain that non-stacked coverage is an alternative to stacked coverage in the sense of the circumstances and limits of recovery. As a result, SGI is not entitled to the conclusive presumption. This is because the conclusive presumption is not derived from the signature of the insured on simply any approved form, but rather from the signature of the insured on an approved form clearly expressing the limitations of and alternatives to non-stacked uninsured motorist coverage. Department approval of the form and its language alone is not enough, because it is for the courts to insure that the law is properly applied. See Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 847-848 (Fla. 1st DCA 2002)(explaining that in the context of administrative appeals, review of an agency interpretation of the law requires a consideration of whether the law was erroneously interpreted and "whether a correct interpretation compels a particular action"; an agency interpretation is afforded great deference, but a court need not defer to an agency interpretation where "it conflicts with the plain and ordinary meaning of the statute").
Overall, SGI relies on policy language and definitions to attempt to create an exclusion described in subsection (d) that would result in Ana being excluded from uninsured motorist coverage. However, because SGI did not employ language clearly and sufficiently describing the limitation and the alternatives to that limitation, SGI did not succeed in excluding Ana from uninsured motorist coverage. Because SGI did not comply with the statutory requirements to exclude Ana from uninsured motorist coverage, Brian could not knowingly consent to limited uninsured motorist coverage excluding Ana. This is the outcome because:
[T]hese requirements were the quid pro quo given by the legislature to insurers for the right to limit uninsured motorist coverage by this exclusion. As further recognized by the Fourth District ... if the policy exclusion is valid despite noncompliance with the statute, the provision of section 627.727(9)(d) is rendered meaningless.
GEICO v. Douglas, 654 So.2d 118, 120-121 (Fla.1995).
Therefore, I would affirm the denial of SGI's motion for directed verdict.
NOTES
[1] Any other conclusion would result in the potential of litigation of forms rejecting uninsured motorist coverage in every case in which they are present.
[2] The comments to the Florida Standard Jury Instructions in Civil Cases also note that "[t]he duration of future damages for which the child may recover is unclear." Standard Jury Instructions  Civil Cases (Nos. 01-1 & 01-2), 825 So.2d 277, 283 (Fla.2002).
[3] "In connection with the offer authorized by this subsection, insurers shall inform the named insured, applicant, or lessee, on a form approved by the department, of the limitations imposed under this subsection and that such coverage is an alternative to coverage without such limitations. If this form is signed by a named insured, applicant, or lessee, it shall be conclusively presumed that there was an informed, knowing acceptance of such limitations." § 627.727(9), Fla. Stat.